**Armando F. SACASAS, Jr.,**
**Petitioner-Appellant,**

v.

**R.H. RISON, Warden, & U.S. Parole Commission, Respondents-Appellees.**

No. 84–7568
**Non-Argument Calendar.***

United States Court of Appeals,
Eleventh Circuit.

March 28, 1985.

* Fed.R.App.P. 34(a); 11th Cir.R. 23.

Frank W. Donaldson, U.S. Atty., Mark E. Tippins, Asst. U.S. Atty., Birmingham, Ala., for respondents-appellees.

Before RONEY, FAY and JOHNSON, Circuit Judges.

PER CURIAM:

Petitioner in this habeas corpus proceeding alleges that the Parole Commission ("Commission") violated his constitutional rights by failing to conduct a "termination of supervision hearing" pursuant to the requirements of 18 U.S.C. § 4211. The district court denied relief and petitioner appeals. We hold that petitioner was not prejudiced by the Commission's failure to hold such a hearing and that in any event, the proper remedy for non-compliance is not a release from custody, but rather a mandamus action to compel compliance. The district court's order denying relief is, therefore, affirmed.

## I. FACTS

On January 12, 1967, Armando Sacasas was sentenced by the United States District Court for the Southern District of New York to twenty years in prison for bank robbery, assault and conspiracy in violation of federal law. Approximately ten years later, Sacasas was granted parole and released. The United States Parole Office in the Southern District of New York undertook supervision of the parolee.

Five years later, in 1981, Sacasas left New York and traveled to Miami. Upon his arrival there, he telephoned parole officials in New York and informed them of his emergency trip to Florida on account of his father's death. At Sacasas' request, his parole supervision was transferred to the United States Probation Office in Miami. This request was granted in order to allow Sacasas to stay in Miami and care for his aging and ill mother. The terms of Sacasas' parole, however, remained unchanged.

In the fall of 1981, Sacasas failed to report and make his whereabouts known to parole officials in Miami. The Commission thereafter had a warrant issued for his arrest. Approximately one year later, federal authorities learned that Sacasas was in custody in the Dade County Jail in Miami with numerous drug-related charges pending against him. Sacasas was turned over to federal authorities in April, 1982. After a hearing before the Commission, Sacasas' parole was revoked and he was sent to the Federal Correctional Institution in Talledega, Alabama.

## II. PROCEEDINGS AND ARGUMENT

On May 17, 1984, Sacasas filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Alabama. Petitioner essentially alleges that under 18 U.S.C. § 4211, the Commission was required to hold a "termination of supervision hearing" five years after his release from custody. Sacasas further argues that had the Commission held a hearing, they possibly would have issued a certificate of discharge and consequently he never would have been subject to the revocation of parole proceeding which led to his incarceration in Talledega. According to petitioner, the only adequate remedy for the Commission's non-compliance at this point in time is release from custody. The district court rejected this argument, and so do we.

## III. DISCUSSION

The primary statute relied on by petitioner, 18 U.S.C. § 4211, provides in pertinent part as follows:

(c)(1) Five years after each parolee's release on parole, the Commission shall terminate supervision over such parolee unless it is determined, after a hearing conducted in accordance with the procedures prescribed in section 4214(a)(2), that such supervision should not be terminated because there is a

likelihood that the parolee will engage in conduct violating any criminal law.

The Commission concedes that it failed to comply with the five-year hearing requirements of § 4211(c)(1), but argues that it nevertheless retained jurisdiction over Sacasas under 18 U.S.C. § 4210 [1] because he had violated the conditions of his parole. The Commission goes on to argue that the remedy for failure to hold a hearing under § 4211(c)(1) is a court order directing a hearing, and not immediate release from supervision.

We agree that the Commission was justified in deciding to extend Sacasas' supervision. He was paroled on August 30, 1976, and would therefore have been entitled to his five-year hearing at the end of August, 1981. The supervision progress report submitted by the Commission indicates that in April, 1978, Sacasas was arrested for driving while under the influence of alcohol. Furthermore, he was not considered by his probation officer to be a trustworthy individual. In April, 1979, it was recommended that parole supervision be continued due to Sacasas' erratic behavior and the fact that his employment could not be verified. In 1980, he was ordered to enroll in an alcohol/psychiatric treatment program. Continued supervision was again recommended in May of that year because of his failure to attend that program. Clearly Sacasas was in violation of his parole long before August, 1981.

■ While we agree that an extension of supervision was warranted, that decision nonetheless should have been made in accordance with § 4211. In the instant case, however, it is doubtful that a hearing would have resulted in a termination of Sacasas' supervision. The evidence strongly suggests that supervision would have been extended. Accordingly, we cannot say that the Commission's failure to hold a § 4211 hearing resulted in any actual prejudice to petitioner.

■ In *U.S. ex rel. Pullia v. Luther,* 635 F.2d 612, 616–17 (7th Cir.1980) (citations omitted), the Seventh Circuit rejected arguments similar to those made by Sacasas and held that:

> The lapse of five years gives a parolee the right to a hearing and decision on termination of supervision unless the Commission terminates supervision without a hearing. A holding that the lapse of five years without a hearing and decision against termination gives the parolee a right to termination cannot be squared with these very significant expressions of the result intended by Congress. Where a decision has not been rendered, the parolee may seek the aid of the court in a *mandamus* action to compel a decision as to his status, but he is not entitled to a writ of habeas corpus.

In reaching this conclusion, the court relied on the legislative history of the Act, including the house sponsor's view that a petition for mandamus was the proper remedy for non-compliance, and not release from custody or supervision. *Id.* at 616. It is thus clear that under such circumstances, a parolee denied a § 4211 hearing is not entitled to a writ of habeas corpus.

In sum, we conclude that the hearing required by § 4211 should have been held, but that in the instant case, the Commission's failure to do so did not actually prejudice petitioner. The record indicates that in all likelihood, a hearing would have resulted in an extension, not termination, of Sacasas' supervision. Furthermore, the legislative history and existing case law make clear that the appropriate remedy for non-compliance by the Commission is a

---

**1.** 18 U.S.C. § 4210 provides in pertinent part as follows:

(a) A parolee shall remain in the legal custody and under the control of the Attorney General, until the expiration of the maximum term or terms for which such parolee was sentenced.

(b) Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that—

(1) such jurisdiction shall terminate at an earlier date to the extent provided under ... section 4211 (relating to early termination of parole supervision),....

mandamus action to compel the required hearing. Accordingly, Sacasas' petition for writ of habeas corpus was properly denied by the district court.

AFFIRMED.