Joseph N. **RICHARDSON**, Petitioner,

v.

Dennis **LUTHER**, Warden, Federal Correctional Institution at Danbury, Connecticut, Benjamin F. Baer, Chairman, U.S. Parole Commission, Gladys W. Mack, Chairperson, District of Columbia Board of Parole, Respondents.

Civ. No. B–88–176 (TFGD).

United States District Court,
D. Connecticut.

Aug. 16, 1988.

Metcalfe C. King, Ellis & King, Washington, D.C., John L. Pottenger, Jerome N. Frank Legal Services, New Haven, Conn., for petitioner.

Barry K. Stevens, Ass't U.S. Atty., Bridgeport, Conn., for respondents.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

DALY, Chief Judge.

Petitioner is an inmate at the Federal Correctional Institution at Danbury, Connecticut. In his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, he claims that defendants improperly calculated and revoked his parole. The Court issued an order to show cause why the relief sought in the petition should not be granted, and respondents have filed a response thereto. Thereafter, the Court heard oral argument on the petition, and the parties filed supplementary briefs. Petitioner is represented by counsel.

### BACKGROUND

On October 30, 1968, petitioner was sentenced by the United States District Court for the District of Columbia to a term of 4 to 12 years in prison for armed robbery and assault with a dangerous weapon in violation of the laws of the District of Columbia. After having been released on bond during the pendency of his appeal of that conviction, he resumed serving his sentence on August 13, 1970. On July 26, 1974, petitioner received a federal sentence from the

United States District Court for the District of Maryland to a prison term of eighteen years for bank robbery committed while on furlough. The 1968 D.C. sentence and the 1974 federal sentence were aggregated for the purpose of calculating petitioner's parole eligibility date. After the 1974 federal conviction, petitioner was placed in the federal penitentiary at Leavenworth, Kansas. He subsequently was transferred into the custody of the District of Columbia Department of Corrections at Lorton, Virginia.

Petitioner was paroled by the District of Columbia Board of Parole ("D.C. Board") on June 13, 1980 from his aggregated term. He remained under active parole supervision until April 18, 1983, when the D.C. Board placed his case in inactive status.

On May 5, 1986, petitioner was arrested for, and subsequently pleaded guilty to, unlawful possession of a firearm after a felony conviction in violation of federal law. The D.C. Board returned petitioner to active parole status on May 27, 1986. Petitioner was sentenced by the United States District Court for the District of Maryland on October 24, 1986 to a term of imprisonment of one year. Petitioner was committed to the Federal Correctional Institite at Raybrook, New York to serve that sentence.

The D.C. Board issued an order on December 8, 1986 transferring jurisdiction over petitioner to the United States Parole Commission ("U.S. Commission"). The order also stated "issue warrant to be executed." Respondents' Exh. 4. The parole violator warrant was executed on July 22, 1987, shortly before the release date on the 1986 federal sentence.

On August 8, 1987, petitioner received a parole revocation hearing, at which he was represented by retained counsel. Based on petitioner's admission, the hearing panel found that petitioner had violated the conditions of parole set by the U.S. Commission by possessing a handgun and had violated the federal criminal statute prohibiting possession of a firearm by a felon. After reviewing the panel's recommendation, the U.S. Commission ordered that petitioner's parole be revoked, that no time spent on parole be credited toward completion of his sentence, and that a presumptive parole date be set for October 13, 1991 after service of sixty months. Petitioner would thereby serve five of the remaining twelve years of his eighteen-year sentence on the 1974 federal bank robbery conviction. In determining petitioner's new mandatory release date and full term date, the U.S. Commission used the date of the issuance of the warrant—December 8, 1986 —rather than the actual date of the warrant execution—July 22, 1987. The U.S. Commission also credited petitioner with the time served on the intervening federal firearm conviction in calculating petitioner's presumptive parole date.

Petitioner appealed the U.S. Commission's decision. Before the National Appeals Board, petitioner claimed that his salient factor score was miscalculated, that the decision to set a term above that set by the federal parole guidelines was unsupported by the facts, and that the D.C. Board guidelines should have been applied to determine the parole violation term. On February 19, 1988, the National Appeals Board affirmed the decision of the U.S. Commission, concluding that petitioner's claims on appeal were without merit. In particular, it noted that, because petitioner was serving the federal sentence on the bank robbery conviction, the D.C. Board guidelines were not applicable.

## DISCUSSION

The instant petition requires an inquiry into the complex interplay between the statutory frameworks and administrative regulations of the D.C. Board and the U.S. Commission. It is noteworthy that this is not the first time that the relationship between the two parole authorities has been litigated in this district. *See Walker v. Luther,* 644 F. Supp. 76 (D.Conn.1986), *aff'd,* 830 F.2d 1208 (2d Cir.1987); *Smith v. Luther,* Civ. No. N–85–413 (EBB), slip op. (D.Conn. Feb. 21, 1986). Given the largely unresolved nature of the law governing the relationship between the D.C. Board and

the U.S. Commission, it is not likely to be the last.

Petitioner claims that the U.S. Commission and the D.C. Board have caused him to be detained illegally and have illegally computed his sentence. He alleges that the U.S. Commission has inconsistently applied federal and D.C. guidelines, resulting in "an irrational mix of state [sic] and federal guidelines to ensure that petitioner spends the maximum time in confinement." *Petition*, at 4 n. 1. In particular, he claims that (1) the D.C. Board failed to notify him of his parole status and to revoke his parole in a timely fashion; (2) the U.S. Commission failed to revoke his parole in a timely manner; (3) the U.S. Commission failed to terminate his parole supervision as mandated by 18 U.S.C. § 4211, or in the alternative, the U.S. Commission failed to credit petitioner for the time spent on parole in setting the sixty-month parole violation term; and (4) the U.S. Commission failed to follow the D.C. Board's guidelines and the sixty-month term is therefore illegal.

A writ of habeas corpus is directed to the person having custody of the individual detained. 28 U.S.C. § 2243. Respondents Baer and Mack, the chairman of the U.S. Commission and the chairperson of the D.C. Board respectively, are not the custodians of the petitioner. Respondent Luther, the warden of the Federal Correctional Institute at Danbury, Connecticut, where petitioner is currently housed, is the petitioner's custodian. *Guerra v. Meese*, 786 F.2d 414, 418–19 (D.C. Cir.1986). Therefore, the petition is DENIED with regard to respondents Baer and Mack.

■ The Court will address the last of petitioner's four claims first. He contends that, because he was under the jurisdiction of the D.C. Board when he committed the intervening federal crime in 1986, the D.C. Board's parole guidelines governing parole violations should have applied to petitioner rather than the federal guidelines. Respondent argues that, because at the time of the intervening federal conviction the only remaining sentence was the federal sentence on the 1974 bank robbery convic-

tion, there was no portion of the D.C. sentence left on which to apply the D.C. parole guidelines.

The 1968 D.C. sentence and the 1974 federal sentence were aggregated for purposes of determining petitioner's parole eligibility date. However, in order to calculate the parole violator term, the two sentences must be "unaggregated." *Smith v. Luther*, Civ. No. N–85–413 (EBB), slip op. at 6 (D.Conn. Feb. 21, 1986) (concluding that the "unaggregation" of D.C. and federal sentences for the purposes of determining parole violator term was appropriate so as to give full effect to the conflicting D.C. and federal law governing parole violators). The unaggregated D.C. sentence expired in 1982. Thus, only the 1974 federal sentence remained when petitioner committed the 1986 federal offense.

In an attempt to bring himself under the D.C. Guidelines, petitioner relies on *Walker v. Luther*, 830 F.2d 1208 (2d Cir.1987). His reliance on *Walker*, however, is misplaced. That case involved prisoners convicted of D.C. offenses housed in federal institutions. After reviewing the statutory language, legislative history and judicial interpretation of D.C. Code § 24–209, which granted to the U.S. Commission the "same power and authority" over federally housed D.C. offenders as the D.C. Board had over D.C.–housed offenders, the court concluded that the U.S. Commission had to apply D.C. rather than federal parole guidelines to those D.C. offenders in federal institutions. *Id.* at 1210–16. Petitioner, at the time of the 1986 federal offense, was on parole on the 1974 federal sentence under the jurisdiction of the D.C. Board. *Walker* is therefore inapposite, and the U.S. Commission appropriately applied federal standards in revoking the petitioner's parole and in setting his parole violator term.

■ The discussion of the applicable parole standards and the petitioner's status raises the related and somewhat intriguing question of the D.C. Board's authority over petitioner and to issue the parole violator warrant prior to the transfer of jurisdiction

to the U.S. Commission.[1] The answer to the question of the source of the D.C. Board's jurisdiction over the petitioner after the term of the D.C. sentence had expired is not at all immediately obvious. Indeed, the resolution of this issue requires a careful analysis of the D.C. Board's governing statutes and the judicial interpretations thereof, starting with the original legislation creating the predecessor to the D.C. Board.

Before 1932, the Federal Board of Parole, which was the precursor to the present U.S. Commission, had jurisdiction over all prisoners in federal and D.C. institutions. In 1932, Congress created the District of Columbia Board of Indeterminate Sentence and Parole. The 1932 Act creating the Board of Indeterminate Sentence and Parole provided in pertinent part that

> the powers of the existing [federal] parole board over prisoners confined in the penal institutions of the District of Columbia shall cease and determine and all the powers of said existing parole board ... over said prisoners confined in the penal institutions of the District of Columbia shall be transferred to and vested in said Board of Indeterminate Sentence and Parole....

*Gould v. Green*, 141 F.2d 533, 535 (D.C. Cir.1944) (quoting Act of July 15, 1932, 47 Stat. 696, 698). Courts subsequently have interpreted the 1932 Act as transferring to the Board of Indeterminate Sentence and Parole complete jurisdiction over all prisoners in D.C. institutions, regardless of whether those prisoners were federal or D.C. offenders. *Howerton v. Rivers*, 326 F.2d 653, 654–55 (D.C.Cir.1963); *Johnson v. Ward*, 278 F.2d 245, 246 (D.C.Cir.1960); *Sims v. Rives*, 84 F.2d 871, 877 (D.C. Cir.), *cert. denied*, 298 U.S. 682, 56 S.Ct. 960, 80

L.Ed. 1402 (1936). Those same powers are now vested in the D.C. Board, which in 1947 was created to replace the Board of Indeterminate Sentence and Parole. *See Noll v. Board of Parole*, 191 F.2d 653, 654 (D.C.Cir.1951).

Petitioner, at the time he was paroled, was in the custody of the District of Columbia Department of Corrections at Lorton, Virginia. His parole was therefore supervised by the D.C. Board, and he remained under the jurisdiction of the D.C. Board until the D.C. Board transferred jurisdiction over petitioner to the U.S. Commission in December, 1986. Even though at the time petitioner committed the 1986 federal offense the 1968 D.C. sentence had expired and only the 1974 federal sentence remained, the D.C. Board nonetheless had the authority to issue the violator warrant.[2]

■ Petitioner's parole was revoked by the U.S. Commission in a timely fashion. It is the execution of the violator warrant, not its issuance that implicates due process considerations and the need for a prompt parole revocation hearing. *Moody v. Daggett*, 429 U.S. 78, 87–89, 97 S.Ct. 274, 278–280, 50 L.Ed.2d 236 (1976); *D'Amato v. U.S. Parole Comm'n*, 837 F.2d 72, 76 (2d Cir.1988). The issuance of a parole violator warrant itself does not result in any loss of a protected liberty interest; rather, only once the warrant is executed and the parole violator is taken into custody upon the warrant are the liberty interest in parole implicated and due process protections required. *Moody*, 429 U.S. at 87, 97 S.Ct. at 278.

■ Petitioner seeks support for his claim that his parole was revoked in an untimely fashion in 18 U.S.C. §§ 4214(b)(1) and 4214(c). Section 4214(b)(1) provides in pertinent part that

---

1. This issue was first raised by the Court during oral argument. The parties subsequently filed supplemental briefs addressing the issue.

2. Concluding that the D.C. Board had the jurisdictional authority to supervise petitioner's parole and to issue a violator warrant still leaves open the slightly different question of whether the D.C. Board must apply D.C. or federal parole standards to a person serving only a federal sentence. Although the cases interpreting the

1932 Act would appear to lead to the conclusion that the D.C. Board could apply D.C. standards to a federal offender under its jurisdiction, *see, e.g., Howerton v. Rivers*, 326 F.2d 653, 654–55 (D.C.Cir.1963), the Court need not address that issue at this time. *But cf., Walker v. Luther*, 644 F.Supp. 76, 80–81 (D.Conn.) (serious equal protection questions are raised by the application of federal standards to a D.C. offender in federal custody), *aff'd*, 830 F.2d 1208 (2d Cir.1987).

[i]n cases in which a parolee has been convicted of such an offense and is serving a new sentence in an institution, a parole revocation warrant or summons issued pursuant to section 4213 may be placed against him as a detainer. Such detainer shall be reviewed by the Commission within one hundred and eighty days of notification to the Commission of placement.

Petitioner complains that the warrant issued by the D.C. Board in December, 1986 was never lodged as a detainer and he never received a one-hundred-and-eighty-day review thereof. Section 4214(b)(1) permits, but does not require, a warrant that has been issued for a parole violation to be lodged as a detainer. Furthermore, because the warrant issued by the D.C. Board was not lodged as a detainer, he was not entitled to a review hearing pursuant to § 4214(b)(1).

■ The reliance on § 4214(c) is similarly unavailing. Section 4214(c) provides that an alleged parole violator shall receive a revocation hearing within ninety days of being retaken into custody. Petitioner claims that he should have been afforded a revocation hearing under § 4214(c) within ninety days of the issuance of the warrant. Again, it is the execution, not the mere issuance of the warrant that triggers the right to the revocation hearing. A parole violator is not retaken into custody until the warrant is executed. *D'Amato,* 837 F.2d at 76. Although the warrant in this case was not executed until July 22, 1987, near the end of petitioner's sentence on the firearms conviction, the revocation hearing was held on August 8, 1987, well within the ninety-day limit set by 18 U.S.C. § 4214(c).

■ In addition, petitioner has failed to demonstrate that he suffered any prejudice from the lapse of time between the issuance of the warrant and its execution. *See Heath v. United States Parole Comm'n,* 788 F.2d 85, 89–90 (2d Cir.1986), *cert. denied,* 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986). In fact, the U.S. Commission used the date of the issuance of the warrant rather than that of its execution for the calculation of petitioner's projected mandatory release and full term dates. Also, in setting the presumptive parole date for the sixty-month parole violation term, it took account of the time served on the intervening federal firearm conviction. The Court concludes, therefore, that petitioner is not entitled to habeas relief on the grounds that his parole was untimely revoked.

■ Petitioner asserts that under federal law he should have been afforded a parole termination hearing after having served five years on parole supervision. Section 4211(c)(1) of Title 18 of the U.S. Code provides that

[f]ive years after each parolee's release on parole, the Commission shall terminate parole unless it is determined, after a hearing, ... that such supervision should not be terminated because there is a likelihood that the parolee will engage in conduct violating criminal law.

Petitioner was paroled in 1980. He did not receive a termination hearing pursuant to § 4211(c) in 1985 or any time thereafter.

Assuming that while petitioner was under the jurisdiction of the D.C. Board he was entitled to a § 4211(c) termination hearing, the remedy for the failure to provide such a hearing is not automatic release by means of a writ of habeas corpus. Section 4211(c) does not create an entitlement to the termination of parole, but rather to the holding of a hearing for the purpose of determining whether there is the requisite basis for the termination of parole. *Tatum v. Christensen,* 786 F.2d 959, 963 (9th Cir.1986); *United States ex rel. Pullia v. Luther,* 635 F.2d 612, 616–17 (7th Cir.1980). Absent a showing of prejudice or bad faith, the appropriate remedy, therefore, is a mandamus action to compel the hearing. *Sacasas v. Rison,* 755 F.2d 1533, 1535 (11th Cir.1985). This conclusion is strongly supported by the legislative history of § 4211. The remarks of both the House and Senate sponsors of the legislation as well as the House Conference Report make clear that Congress intended that the certain findings regarding the probability of future criminal conduct before parole supervision is terminated and

that the proper legal remedy to the failure to hold a termination hearing is an action in mandamus to compel the hearing and not release from custody. *Pullia*, 635 F.2d at 616 (citing 122 Cong.Rec. 5163 (1976) (remarks of Rep. Kastenmeier); 122 Cong. Rec. 4862 (1976) (remarks of Sen. Burdick); and H.R. No. 5727, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S. Code Cong. & Admin. News 335, 365 (House Conference Report)); *see also Heath v. U.S. Parole Comm'n*, 788 F.2d 85, 89 (2d Cir.1986), *cert. denied*, 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986).

Petitioner did not bring a mandamus action to compel the holding of a § 4211(c) hearing after the lapse of five years of parole supervision. That remedy for all practical purposes is now, after the parole violation, unavailable to him. Petitioner nevertheless claims that he has been prejudiced in light of the likelihood that his parole would have been terminated if a § 4211(c) hearing had been held. Thus, he would not now be serving a parole violator term. In support of this claim, he cites the fact that the D.C. Board placed him on "inactive" status in 1983.

The Court does not accept the supposition that, had such a hearing been held, the petitioner's parole would have been terminated. Rather, the record supports the contrary. The standard for early parole termination under § 4211(c) is a likelihood that the parolee will not engage in conduct violating any criminal law. In particular, the Court notes that the fact that petitioner committed the 1974 bank robbery while on furlough on the 1968 D.C. sentence suggests that a finding of a likelihood that petitioner would engage in conduct violating the criminal law would have been made. The Court concludes that even though no hearing was held petitioner has not suffered any prejudice therefrom. Petitioner therefore is not entitled to release from custody for the failure to provide a timely parole termination hearing. *See Tatum*, 786 F.2d at 963; *Sacasas*, 755 F.2d at 1535.

When the U.S. Commission revoked petitioner's parole in 1987 and committed him to serve a sixty-month parole violator term, it did not credit him with any of the time spent on parole. The U.S. Commission's published regulations require "street time" be forfeited after a parolee is convicted of a crime punishable by imprisonment if committed while on parole. 28 C.F.R. § 2.52(c)(2). Because federal parole guidelines applied, the U.S. Commission properly denied credit for time spent on parole. *See D'Amato*, 837 F.2d at 78; *Miller v. Hadden*, 811 F.2d 743, 747 (2d Cir.1987).

Accordingly, the petition for writ of habeas corpus is hereby DENIED.

SO ORDERED.