**UNITED STATES of America ex rel. Robert PULLIA, Petitioner-Appellant,**

v.

**Dennis LUTHER, Warden, Metropolitan Correctional Center, Respondent-Appellee.**

No. 80–1204.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1980.

Decided Dec. 2, 1980.

Jeffrey B. Steinback, Chicago, Ill., for petitioner-appellant.

Thomas P. Sullivan, U. S. Atty., Robert T. Grueneberg, Asst. U. S. Atty., Chicago, Ill., for respondent-appellee.

Frederick H. Branding, Asst. U. S. Atty., Civil Division, for U. S.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and CAMPBELL, Senior District Judge.[*]

FAIRCHILD, Chief Judge.

In this appeal, petitioner relies upon the provisions for early termination of parole set forth in 18 U.S.C. § 4211, which were enacted as part of the 1976 Parole Commission and Reorganization Act (hereinafter "Parole Act").[1] Specifically, petitioner argues that the lapse of five years after release on parole without a decision by the Commission (after a hearing) as provided in section 4211(c)(1) results in the automatic termination of the Commission's jurisdiction over a parolee, entitling that person to a writ of *habeas corpus*. We cannot agree. Although the language of the statute is ambiguous, the legislative history makes abundantly clear that termination of parole upon the passage of five years is not automatic and that the remedy for the Commission's failure to comply with the decision-making deadlines of the Act is an action to compel the decision, not to secure release. Accordingly, the order of the district court quashing the petition for *habeas corpus* is affirmed. Because petitioner's interpretation of the relevant section is without mer-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. 18 U.S.C. § 4201 *et seq.*

it, we find it unnecessary to decide whether the Act applies to situations where, as here, the parolee's term of release commenced prior to the effective date of the Act.

The relevant facts may be simply stated. Petitioner was sentenced to twelve years imprisonment on a federal felony conviction and after serving five–and–one–half years was placed on parole on August 30, 1974. On July 16, 1979, a parole violation warrant was issued as a result of the arrest of petitioner on state criminal charges accusing him of possession of burglary tools, unlawful use of a weapon, and violation of the Illinois gun registration law. Execution of the warrant was delayed until December 18, 1979, for reasons not clear from the record. On January 3, 1980, the district court, at petitioner's request, issued a writ of *habeas corpus*, returnable January 4, 1980. After a hearing the next day, the district court quashed the writ, stating its reasons in a memorandum opinion. Subsequently, in late January or early February, 1980, the Parole Board, following a hearing, revoked petitioner's parole. Petitioner presently is in custody and is reportedly scheduled for release in late 1980.

The district court rejected petitioner's argument that under 18 U.S.C. § 4211(c)(1) his supervision and the jurisdiction of the Commission automatically terminated on August 30, 1979, five years after he was placed on parole. The court found that the statute was not retroactive and therefore did not apply to him, and that, in any event, the parole violation warrant was issued within the five-year period set by the statute, thus tolling the running of the deadline.

On appeal, Pullia challenges the district court's interpretation of the statute. He claims that the cases relied upon by the district court do not hold the new Act inapplicable to persons placed on parole prior to May 14, 1976, the effective date of the legislation, and that if properly construed the statute is retroactive to such situations. He further argues that the Parole Commission was obligated by 18 U.S.C. § 4211(c)(1) to afford him a parole revocation hearing

prior to the expiration of the five-year period beginning with his release on parole. The failure to do so before August 30, 1979, petitioner claims, terminated the jurisdiction of the Commission over him and, consequently, his custody after August 30, 1979, was and continues to be illegal. We cannot agree with petitioner's arguments.

The provisions of the Parole Act upon which Pullia's second argument turns are sections 4210 and 4211. Section 4210(b)(1) provides in part that the jurisdiction of the Parole Commission "shall terminate no later than the date of the expiration of the maximum term or terms for which [the parolee] was sentenced, except that ... such jurisdiction shall terminate at an earlier date to the extent provided under ... section 4211 ...." Section 4211, in turn, states in pertinent part that:

Five years after each parolee's release on parole, the Commission shall terminate supervision over the parolee unless it is determined, after a hearing conducted in accordance with the procedures prescribed in section 4214(a)(2), that such supervision should not be terminated because there is a likelihood that the parolee will engage in conduct violating any criminal law.

In reaching its conclusions that these provisions are not retroactive and do not apply to a period of release on parole, such as Pullia's, which commenced before the new statute's enactment, the district court relied without discussion, on an earlier decision in *White v. Warden, U. S. Penitentiary*, 566 F.2d 57 (9th Cir. 1977). In *White*, the petitioner argued that the Parole Act, effective May 14, 1976, entitled him to credit for 776 days spent on parole prior to revocation of his parole on January 4, 1971. Unlike its statutory predecessor, the new section 4210(b) has the effect of permitting time spent on parole prior to a revocation of parole not due to commission of a new crime to be included in computing whether an individual's maximum term has been served. The court refused to attribute retroactive effect to the section because, among other reasons, there was in the Act

"no explicit language or necessary implication" that it should be considered retroactive. 566 F.2d at 61. The court found significant the earlier decisions in *Daniels v. Farkas*, 417 F.Supp. 793 (C.D.Cal.1976) and *Weatherington v. Moore*, 431 F.Supp. 515 (W.D.Tenn.1977), (later affirmed 577 F.2d 1073 (6th Cir. 1978)). *Daniels* and *Weatherington* had both raised similar issues concerning the retroactivity of section 4210(b) and both found that the section was limited to prospective application.

The opinions in *Daniels, White,* and *Weatherington* all quote from the legislative history of the Parole Act statements made on the floor of the Congress by the bill's Senate sponsor, Senator Quentin Burdick. The Senator stated:

> This legislation is prospective in its application. Decisions to grant, deny, modify, or revoke parole made by the parole agency prior to the effective date of this act are to be carried out pursuant to the law in effect at the time of the decision. *Examples of prospective application of the provisions of this legislature include,* but are not limited to, the length of time between hearings for a prisoner denied parole—section 4208(h)—and computation of the time remaining to be served for individuals whose parole has been revoked—section 4210(b)—and *provisions relating to termination of parole supervision—Section 4211.*

122 Cong.Rec. 4861 (1976) (emphasis added).

These comments evidence a clear legislative intent that section 4211 be limited to prospective application, and might reasonably be interpreted to mean, in a case such as this, that because the "[decision] to grant ... parole [was] made ... prior to the effective date of [the] act" the parole must "be carried out"—that is to say terminated in accordance with—"the law in effect at the time of the decision [to grant parole]." Such a reading of the statute would appear to square with the dictates of logic. To hold section 4211 retroactive would impose numerous new hearing and decisionmaking deadlines on parole agencies with respect to virtually all persons on parole more than two years at the time of passage of the Act [2] without affording such bodies the opportunity to phase in compliance with these new requirements. And in cases where the new deadlines had passed prior to the Act's taking effect, the Parole Commission would be subject to numerous actions by parolees seeking to compel decisions or, as in the present case, seeking automatic release. There is no indication that Congress ever intended such dramatic consequences to flow from passage of the Act.

Yet, notwithstanding the decisions in *Daniels, White,* and *Weatherington,* the foregoing interpretation of the legislative history, and the practical consequences that might ensue from holding the section retroactive, the proper resolution to the question of retroactivity is far from certain. Petitioner argues, not implausibly, that *White* and *Weatherington* (and presumably *Daniels,* although he fails to mention it) may be distinguished because in each of those cases there had been a parole revocation hearing prior to the effective date of the Act which recalculated each petitioner's release date. He claims these cases merely uphold decisions by parole agencies made before the Act came into operation, and that because no revocation or modification of parole occurred in the instant case before May 14, 1976, it should fall within the prospective application of the relevant provisions. Admittedly, all three cases are distinguishable at least on the ground that they involved a section other than section 4211, the one Pullia now primarily relies upon. So, too, the statements quoted from the legislative

---

**2.** In addition to the five-year deadline set by subsection (c)(1), subsection (b) of Section 4211 provides, in part, that "Two years after each parolee's release on parole, and at least annually thereafter, the Commission shall review the status of the parolee to determine the need for continued supervision ..." and subsection (c)(2) states "If supervision is not terminated under subparagraph (1) of this subsection the parolee may request a hearing annually thereafter, and a hearing, with procedures as provided in subparagraph (1) of this subsection shall be conducted with respect to such termination of supervision not less frequently than biennially."

history might be read to support Pullia's argument. One could reasonably contend that the decision with which we are concerned is not a "[decision] to grant parole made ... prior to the effective date of [the] act," but a decision to terminate parole which should have occurred *after* the new law became operative. When the question is framed this way, the legislative history suggests no reason why the decision should not come within the "prospective application of ... Section 4211." Under this rationale, the decisions in *Daniels, White*, and *Weatherington* may be accounted for simply by the fact that, unlike the present appeal, those cases involved pre-Act "[d]ecisions to ... modify or revoke parole."

The issue of whether section 4211 should apply to a period of release on parole which began prior to the effective date of the Act is complicated by indications in recent judicial decisions that in practice the Parole Commission treats the new law as though it were fully retroactive. In *Robbins v. Thomas*, 592 F.2d 546 (9th Cir. 1979), the Ninth Circuit was faced with "the narrow issue of what procedure the United States Parole Commission should follow when events casting doubt on the advisability of terminating parole occur between a parole termination hearing and the issuance of a final decision based on that hearing." 592 F.2d at 547. The court held that due process and relevant statutory standards are satisfied if the Commission reopens the case and at a supplemental hearing accords the parolee the same procedural rights as would be available to a parolee at other parole termination hearings. Central to the case was the interpretation of section 4211(c)(1), the section here in issue, under which the initial hearing in *Robbins* apparently was held. Although Robbins had begun his parole prior to the effective date of the Act, no party to the litigation questioned whether he could have claimed a statutory right to such a hearing had one not been held. As such, the issue of retroactivity was never raised before or considered by the court.

More recently, in *United States ex rel. Del Genio v. United States Bureau of Prisons* (Slip Op. No. 79–2202, 7th Cir., Sept. 8, 1980), our own court was called upon to interpret section 4210(b)(2) and we held it to mean that whenever a parolee is convicted of a crime punishable by imprisonment his street time may be revoked, regardless of whether he is ever sentenced to imprisonment (as opposed to placed on probation) for that crime. Del Genio's most recent period of release on parole had spanned from November, 1974 to March, 1979, at which time parole was revoked, yet the government did not argue that the new Act was inapplicable. Consequently, the issue of retroactivity was not addressed by either the district court or court of appeals. Finally, in the present case, while not disputing the correctness of the district court's finding that the section is not retroactive, respondent urges that this court need not reach that issue, but rather should rule against petitioner because his construction of section 4211(c)(1) is without merit. Having no desire to discourage the Parole Commission from according pre-Act parolees the benefit of the statute if such has been their practice, and finding the interpretation of section 4211(c)(1) in favor of respondent a fully adequate alternative ground upon which to decide this appeal, we accept respondent's suggestion and decline to decide whether section 4211 applies to a period of release on parole which commenced prior to the effective date of the Parole Act.

Pullia contends that under section 4211(c)(1) a hearing is a prerequisite only to continuation of supervision, not to termination, and that unless the Commission has held a hearing and decided to the contrary, the statute compels it to terminate parole on the expiration of five years. For support, petitioner relies on the use of the mandatory phrase "shall terminate" in section 4211(c)(1), in contrast to the earlier use of "may terminate" in section 4211(a).[3] Re-

---

**3.** Section 4211(a) states:
Upon its own motion or upon request of the parolee, the Commission may terminate

supervision over a parolee prior to the termination of jurisdiction under section 4210 [18 U.S.C. § 4210].

spondent, on the other hand, disputes this reading of the statute, maintaining that the words "the Commission shall terminate" must be read in conjunction with the phrase "after a hearing" and that termination may only result from a deliberate decision of the Commission.

We are of the opinion that this dispute as to the meaning of section 4211(c)(1) cannot be resolved solely on the basis of grammatical analysis and that the statute's ambiguity makes it necessary and appropriate to look to the legislative history of the Parole Act for clarification. See *Communication Systems, Inc. v. FCC*, 595 F.2d 797, 800 (D.C.Cir.1978).

Representative Robert Kastenmeier, the House sponsor, made the following remarks in reference to the deadlines provided by the Act:

> [T]here are certain decisionmaking deadlines provided for in H.R. 5727. If the Commission fails to act in accordance with these deadlines, the prisoner or parolee would not automatically be released from confinement, but he could compel the Commission to make their decision promptly .... [I]f for some reason [the Commission] were unable to meet a deadline, the prisoner or parolee could solicit the assistance of the court under existing section [28 U.S.C. § 1361], which is an action in mandamus to compel an employee of the United States to perform his duty. I expect these cases would be very rare, but the court would review the case and determine whether there was any justification for the delay. If there is no justification, the court would remedy the situation by ordering a hearing immediately. Otherwise, the Commission would be in contempt of court.

122 Cong.Rec. 5163 (1976). To the same effect, the Senate sponsor Senator Burdick, stated:

> [T]he conferees acknowledge that from time to time extraordinary reasons may result in delay in making any of the decisions. If a legal remedy is necessary in the absence of good faith effort on the part of the Commission, the remedy is to compel the decision, not release from custody.

122 Cong.Rec. 4862 (1976).

In addition, with respect to Pullia's claim that parole supervision expires unless a hearing and decision occur *before* the expiration of five years on parole, the Section–By–Section Analysis of the House Conference Report states:

> This section further provides that after 5 years of parole supervision each parolee shall be released from further supervision, unless the Parole Commission determines that there is a likelihood that the parolee will engage in criminal behavior. The phrase "likelihood that the parolee will engage in conduct violating any criminal law" is a phrase closely related to the term "release would not jeopardize the public welfare" from section 4206. Both rely on the use of probability in making the judgments required of the Commission by this section. Likelihood is a higher standard upon which the judgment is to be based, but this is only recognition by the Conferees that the Commission has five continuous years of supervision in the community on which to base its comparisons with other offenders who have similar backgrounds.

H.R. No. 5727, 94th Cong., 2nd Sess. 2, *reprinted in* [1976] U.S.Code Cong. & Ad. News pp. 335, 365.

These statements make clear that Congress intended that the Commission would exercise its judgment prior to releasing a parolee from supervision. They also recognize that the Commission's judgment will be based on "five continuous years of supervision," which, of course, would be impossible if, as petitioner argues, a hearing had to be held *within* five years. The lapse of five years gives a parolee the right to a hearing and decision on termination of supervision unless the Commission terminates supervi-

sion without a hearing. A holding that the lapse of five years without a hearing and decision against termination gives the parolee a right to termination cannot be squared with these very significant expressions of the result intended by Congress. Where a decision has not been rendered, the parolee may seek the aid of the court in a *mandamus* action to compel a decision as to his status, but he is not entitled to a writ of *habeas corpus*. *See also, Robbins v. Thomas, supra,* 592 F.2d at 546, n. 7; *Smith v. United States,* 577 F.2d 1025, 1027–1028 (5th Cir. 1978); *Bryant v. Grinner,* 563 F.2d 871, 872 (7th Cir. 1977). Accordingly, Pullia was not entitled to the relief he sought.

Because we decide this appeal on the ground that petitioner's interpretation of section 4211(c)(1) is erroneous, we find it unnecessary to consider whether the issuance of the parole violation warrant against Pullia on July 16, 1979, tolled the running of the five-year period set by the statute.

The judgment appealed from is affirmed.

Affirmed.