In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2971

James J. Valona,

Plaintiff-Appellant,

v.

United States Parole Commission,

Defendant-Appellee.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97-C-531--Rudolph T. Randa, Judge.


Submitted November 20, 2000--Decided December 22, 2000


  Before Fairchild, Easterbrook, and Diane P. Wood,
Circuit Judges.

  Easterbrook, Circuit Judge.  Federal offenders
whose crimes predated November 1, 1987, remain
eligible for parole. James Valona was released on
parole in December 1992 and, under 18 U.S.C.
sec.4211(c)(1) (1982 ed.), was presumptively
entitled to release from supervision five years
later:

Five years after each parolee's release on
parole, the Commission shall terminate
supervision over such parolee unless it is
determined, after a hearing conducted in
accordance with the procedures prescribed in
section 4214(a)(2), that such supervision should
not be terminated because there is a likelihood
that the parolee will engage in conduct violating
any criminal law.

December 1997 came and went without the hearing
and decision required by sec.4211(c)(1). Valona
sought a judicial order ending the Commission's
supervision over him. Twice the district court
declined to reach the merits of this claim; twice
we remanded, the second time adding that, until
the Parole Commission got around to Valona's
case, supervision must cease. Valona v. United
States, 138 F.3d 693 (7th Cir. 1998); Valona v.
United States Parole Commission, 165 F.3d 508
(7th Cir. 1998). In February 1999 the National

Appeals Board of the Commission concluded that he should remain under supervision because he is a suspect in an ongoing arson investigation. The district court concluded that this decision is neither arbitrary nor capricious and reinstated the Commission's authority over Valona. (The district court used the standard of the Administrative Procedure Act, 5 U.S.C. sec.706, as our opinions required. See 18 U.S.C. sec.4218 (1982 ed.).)

One of Valona's arguments is that, because the Commission missed the five-year deadline and this court lifted his supervision as an interim remedy, see 5 U.S.C. sec.705, the Commission cannot resume supervision. An interim remedy under sec.705 is just that, however--interim. Now that the Commission has rendered its decision, the legal question is whether delay always brings parole supervision to a close. Two decades ago we addressed that question and concluded that parole supervision can survive tardy actions by the Parole Commission. Pullia v. Luther, 635 F.2d 612 (7th Cir. 1980). Accord, Russ v. Perrill, 995 F.2d 1001, 1003 (10th Cir. 1993); Penix v. United States Parole Commission, 979 F.2d 386, 388-90 (5th Cir. 1992); Robbins v. Thomas, 592 F.2d 546, 549 n.7 (9th Cir. 1979). Revisiting that interpretation of a repealed statute applicable to a dwindling number of cases could not be justified--especially not after Brock v. Pierce County, 476 U.S. 253 (1986), which shows that as a rule an agency that misses a statutory deadline does not lose authority to make a belated decision with the same legal effect as a timely one. Congress sometimes specifies a consequence of delay, along the lines of a statute of limitations or the law at issue in Miller v. French, 120 S. Ct. 2246 (2000), but, when the statute is silent on the effect of delay, shortcomings by public officials rarely preclude (eventual) implementation of laws designed for protection of the public at large. Valona received an appropriate remedy when he was released from supervision pending the Commission's action. Whether he should be on parole supervision in 2001 and later depends on the adequacy (as opposed to the timing) of the Commission's disposition.

Section 4211(c)(1) calls for extended supervision if the Commission concludes that there "is a likelihood that the parolee will engage in conduct violating any criminal law." This language does not answer a vital question: how likely must future criminality be? Even a saint may violate the criminal law in the future; what is more, most hardened criminals eventually go straight (if only because many kinds of crime require physical exertion in which older persons

cannot engage). Efforts to predict future criminality person-by-person have not done well. Although past convictions are good indicators of future crimes, this is prediction in the statistical sense; no one has been able to devise a method of determining which released convicts will commit new crimes. Those who kill in a fit of passion are unlikely to murder again, but Valona was a drug dealer, and the recidivism rate is high when crime pays. If this regularity were enough to justify a finding of "likelihood," however, the statute might as well deny release to all drug dealers; yet if "likelihood" means "more likely than not" then there is little point to the possibility of extension, because someone who spends five years on parole without a fresh conviction must be among those at lesser risk of recidivism.

Because any mechanical reading of "likelihood" either extends or terminates parole automatically, and because automatic extensions (or terminations) are just what sec.4211(c)(1) does not authorize, the statute effectively hands discretion to the Parole Commission. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). One of the Commission's regulations specifying how this discretion will be exercised provides that supervision will continue if unresolved criminal charges are pending against the parolee. 28 C.F.R. sec.2.43(e)(4). No "charges" have been leveled against Valona, but a cloud hangs over his head, and an investigation is ongoing.

In July 1996 Valona asked his parole officer to arrange for early termination of his supervision. The parole officer replied that this could not be done while the balance of Valona's criminal fine, some $23,000, remained unpaid. Only that month Valona had filed a financial statement claiming to have at least $75,000 worth of antiques available for sale. That inventory was soon turned into cash-- though in a way the parole officer could not have contemplated. Six days after the officer told Valona to pay his fine, the warehouse holding that inventory burned to the ground, and Valona submitted an insurance claim for the stated value of his stock in trade. At about the same time Michael Antonelli, who Valona had come to know while in prison and who like Valona had been released on parole, told his wife that he had a contract to burn down a warehouse holding antique furniture; later Antonelli told his wife that the job had been done and that he had been paid for his work. Valona has not been charged with hiring Antonelli to torch the warehouse, but neither has he been absolved of suspicion. Parole officials also suspect him of bankruptcy fraud (it seems that he

obtained a discharge in 1995 without revealing his antiques and other assets) and of associating with other felons. Suspicion is not proof, but "likelihood" also falls short of proof--and new crimes committed after release from prison are the best possible indicator that there "is a likelihood that [Valona] will engage in conduct violating any criminal law." Sensible people could conclude that supervision should be continued, if only to allow the intermediate step of revoking Valona's parole rather than initiating a new criminal prosecution. The Commission's decision to continue Valona's parole cannot be set aside under the APA.

Valona argues that, even if the Commission's decision of February 1999 is lawful, we should remand to the district court with instructions to enter an order requiring the Commission to comply with sec.4211(b): "Two years after each parolee's release on parole, and at least annually thereafter, the Commission shall review the status of the parolee to determine the need for continued supervision." The Commission's record of delay does raise the question whether it can be counted on to review Valona's situation "at least annually"; it not only missed the five-year deadline under sec.4211(c)(1) but also has not inquired since February 1999, yet we are closing in on the second anniversary of that decision. Perhaps, however, the Commission believed that it could not properly hold additional proceedings while the interim order lifting supervision remained in force. Now that supervision has resumed, so has the schedule under sec.4211(b). If the Commission again lapses into inaction, Valona will again be entitled to interim cessation of supervision. We are confident that the district court will protect his entitlements.

Affirmed