**George I. BENNY, Petitioner–Appellant,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent–Appellee.**

No. 00–16867.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 2002.

Filed July 2, 2002.

---

Sean M. SeLegue and Robert J. Breakstone, Rogers Joseph O'Donnell & Phillips, San Francisco, California, for the petitioner-appellant.

Alex G. Tse, Assistant United States Attorney, San Francisco, California, for the respondent-appellee.

Before BEEZER, THOMAS and W. FLETCHER, Circuit Judges.

## OPINION

BEEZER, Circuit Judge.

George I. Benny ("Benny") appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241 or, alternatively, a writ of mandamus under 28 U.S.C. § 1361. Benny seeks termination of parole supervision and asserts two due process claims arising from a parole revocation proceeding. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). We affirm in part, vacate the judgment and remand.

I

Benny was sentenced to 30 years imprisonment following a jury conviction of mail fraud and racketeering. *See United States v. Benny,* 786 F.2d 1410, 1413–14 (9th Cir.1986). He served the first 10 years of his sentence in prison. The United States Parole Commission ("Commission") released Benny on parole on December 16, 1993 to serve the remainder of his sentence. In addition to standard terms of parole, the Commission imposed special

conditions regulating Benny's financial disclosures, eligibility for employment and involvement in real estate activities.

Benny was charged twice in 1995 with violating the terms of his parole. In January of that year, a probation officer reported that Benny failed to disclose personal income and loans he made to a nephew. Five months later the probation officer reported that Benny failed to disclose his involvement in a major traffic accident and mischaracterized the accident when questioned by the probation officer. The Commission did not revoke parole but formally reprimanded Benny in writing on each occasion.

In November 1998 the probation officer charged Benny with more parole violations. Benny reportedly was associating with a person engaged in criminal activity [1] and was involved in an unauthorized real estate transaction. This time, the Commission decided to initiate parole revocation proceedings against Benny. The Commission issued a parole violator warrant and took Benny into custody on November 18, 1998. Benny idled in custody for 31 days before, on December 21, 1998, a Commission case analyst conducted a preliminary interview and determined that there was probable cause to arrest Benny for the charged parole violations.

The Commission offered Benny an expedited parole revocation process whereby he would waive a formal revocation hearing and accept responsibility for the alleged parole violation behavior. In return, the Commission would release Benny to a second parole term after three months of incarceration, subject to the same special conditions imposed in the prior parole. Benny accepted the offer and, as agreed, was re-paroled on February 18, 1999 after serving three months incarceration.

Benny filed a petition for a writ of habeas corpus or, alternatively, a writ of mandamus seeking termination of parole supervision for lack of jurisdiction and asserting two due process claims relating to the parole revocation process. He alleged (1) that the Commission automatically lost jurisdiction over him when it failed to make an early termination decision pursuant to 18 U.S.C. § 4211(c)(1),[2] (2) that the Commission improperly arrested him and failed to conduct a timely probable cause determination, and (3) that the Commission improperly imposed new special conditions in the second parole release.

The district court treated Benny's petition as one for habeas relief, rejected all three claims on the merits and denied the petition.

## II

We review de novo a district court's denial of a § 2241 habeas petition. *Zitto v. Crabtree,* 185 F.3d 930, 931 (9th Cir.1999) (per curiam). Our jurisdiction to review the Commission's decisions is limited. We determine whether the Commission exceeded its statutory authority or acted so arbitrarily as to violate due process. *Wallace v. Christensen,* 802 F.2d

---

1. Benny's alleged girlfriend had an outstanding warrant relating to charges of misdemeanor child neglect and contempt of court.

2. Section 4211(c)(1) is part of the Parole Commission and Reorganization Act ("Parole Act"), 18 U.S.C. §§ 4201–4218 (1984). The Parole Act was repealed effective November 1, 1987. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, §§ 218(a)(5), 235(b)(1)(A),

98 Stat. 1837, 2027 (1984). The law remains in effect as to any individual who committed an offense before November 1, 1987. *See* Parole Commission Phaseout Act of 1996, Pub.L. No. 104–232, § 2(a), 110 Stat. 3055, 3055 (1996). Benny was convicted in 1984. There is no dispute that the Parole Act applies to him.

1539, 1551–52 (9th Cir.1986) (en banc). Judgments "involving a broad range of factors" that the Commission takes into account in arriving at its decision are committed to the Commission's discretion and are unreviewable even for abuse of discretion. *Id.* at 1551.

## III

The Parole Act provides:

[T]he jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that ... such jurisdiction shall terminate at an earlier date to the extent provided under ... section 4211....

18 U.S.C. § 4210(b)(1) (1984). Section 4211(c)(1) states:

Five years after each parolee's release on parole, the Commission shall terminate supervision over such parolee unless it is determined, after a hearing ..., that such supervision should not be terminated because there is a likelihood that the parolee will engage in conduct violating any criminal law.

18 U.S.C. § 4211(c)(1) (1984).

Benny argues that the plain language in § 4211(c)(1) requires automatic termination of the Commission's jurisdiction over a parolee if five years on parole release elapse without an early termination decision by the Commission. Benny was released on parole on December 16, 1993. Five years passed with no early termination decision by the Commission. Benny contends that the Commission lost jurisdiction over him on December 16, 1998.

We considered and rejected the same argument in *Tatum v. Christensen,* 786 F.2d 959, 963 (9th Cir.1986), *overruled on other grounds by Wallace v. Christensen,* 802 F.2d 1539, 1554 & n. 10 (9th Cir.1986) (en banc). *Tatum* adopts the reasoning provided by the Seventh Circuit in *United States ex rel. Pullia v. Luther,* 635 F.2d 612 (7th Cir.1980). The parolee-petitioners in *Tatum* and *Luther,* like Benny, argued that parole supervision automatically terminates when the Commission fails to make an early release determination five years after parole release. *See Tatum,* 786 F.2d at 963; *Luther,* 635 F.2d at 612. They too relied on the plain language of § 4211(c)(1).

The Seventh Circuit holds that the lapse of five years without an early termination hearing does not automatically terminate the Commission's jurisdiction. *Id.* at 616–17.[3] The court reasons that "the meaning of section 4211(c)(1) cannot be resolved solely on the basis of grammatical analysis and that the statute's ambiguity makes it necessary and appropriate to look to the legislative history of the Parole Act for clarification." *Id.* at 616. Statements by the Parole Act's House and Senate sponsors indicate that delay in making an early termination decision does not terminate the Commission's jurisdiction. *Id.* According to the legislative history, the remedy for a delay is a writ of mandamus to compel an early termination hearing. *Id.* at 616–17.

In *Tatum* we agree with the reasoning in *Luther* and hold that § 4211(c)(1) "gives a parolee a right to a Parole Extension

---

**3.** The Seventh Circuit has granted provisional release from supervision where the Commission's delay in holding early termination proceedings was unreasonable. *Valona v. United States Parole Comm'n,* 165 F.3d 508, 510–11 (7th Cir.1998) (ordering termination of parole supervision as interim relief under the Administrative Procedure Act, 5 U.S.C. § 705). *Valona* does not undermine *Luther,* and Benny does not contend here that the Commission's delay is unreasonable.

Hearing, not a right to automatic termination or release." *Tatum,* 786 F.2d at 963; *see also Robbins v. Thomas,* 592 F.2d 546, 549 n. 7 (9th Cir.1979) ("As a remedy for the violation of [§ 4211(c)(1)] procedural rights, [the petitioner] was not entitled to release from parole, but only to a properly considered decision by the Commission.").[4]

■ We are bound by decisions of prior panels unless an en banc decision, Supreme Court decision or subsequent legislation undermines those decisions. *United States v. Washington,* 872 F.2d 874, 880 (9th Cir.1989). Benny argues that § 4211(c)(1) should be interpreted by its plain text rather than, as in *Tatum* and *Luther,* by reference to legislative history. Benny additionally contends that *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), decided after *Tatum,* supports the claim that § 4211(c)(1) dictates termination of supervision after five years of parole release unless the Commission affirmatively decides to continue supervision. Neither argument persuades us to abandon *Tatum.*

### A.

■ Benny argues that automatic termination of parole supervision is clearly contemplated by the plain language of § 4211(c)(1). He asserts that the rules of statutory interpretation require adherence to the plain meaning of a statute when the statutory language is clear. According to

Benny, *Tatum* improperly relies on the Parole Act's legislative history.

We cannot disturb *Tatum* absent some relevant change in the law. Benny argues that there has been such a change in the rules of statutory interpretation. He asserts that since *Tatum* "courts have grown increasingly reluctant to rely on so-called legislative history to interpret statutes, focusing instead on the statutory text itself." Benny correctly recites a basic rule of statutory interpretation, but the rule was applied no differently in *Tatum's* time than today. *Compare United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir.1999), *cert denied,* 531 U.S. 999, 121 S.Ct. 498, 148 L.Ed.2d 468 (2000) ("The first step in ascertaining congressional intent is to look to the plain language of the statute.... If the statute is ambiguous—and only then— courts may look to its legislative history for evidence of congressional intent.") (citations omitted) *with Church of Scientology of Cal. v. United States Dep't of Justice,* 612 F.2d 417, 421 (9th Cir.1979) ("The plain meaning rule ... stands for the notion that if the language of a statute is clear and there is no ambiguity, then there is no need to 'interpret' the language by resorting to the legislative history or other extrinsic aids.") (citations omitted).

*Tatum's* reliance on legislative history to interpret § 4211(c)(1) was as proper then as it is today. *Tatum* does not explicitly hold that § 4211(c)(1) is ambiguous, but agrees with and cites to *Luther,* which

---

4. Other circuits addressing the issue have reached the same conclusion as that in *Luther* and *Tatum. See Penix v. United States Parole Comm'n,* 979 F.2d 386, 388–90 (5th Cir.1992) (agreeing with *Luther* and holding that parole supervision does not automatically end five years after commencement of parole); *Sacasas v. Rison,* 755 F.2d 1533, 1535 (11th Cir. 1985) (same); *see also Heath v. United States Parole Comm'n,* 788 F.2d 85, 89 (2d Cir.1986) (holding that failure to hold timely disposi-

tional review of detainer warrant as required under 18 U.S.C. § 4214(b)(1) did not automatically terminate Commission's jurisdiction over parolee); *Russ v. Perrill,* 995 F.2d 1001, 1003 (10th Cir.1993) (adopting *Luther's* interpretation of 18 U.S.C. § 4211(c)(1) and holding that failure to conduct timely early release hearing under Youth Corrections Act did not terminate Commission's jurisdiction over youth parolee).

does so hold. *See Tatum*, 786 F.2d at 963. Only after holding that § 4211(c)(1) is ambiguous does *Luther* turn to the legislative history. *Luther*, 635 F.2d at 616. *Tatum*, by adopting the reasoning in *Luther*, properly relied on the Parole Act's legislative history. We are unpersuaded that *Tatum's* interpretation of § 4211(c)(1) is inconsistent with the rules of statutory interpretation.

### B.

Benny argues that *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), undermines the holding in *Tatum*.

In a decision prior to *Allen*, the Supreme Court holds that prison inmates do not possess a general liberty interest in parole release even though a state has created a parole system. *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 11, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The Court also holds, however, that a Nebraska parole statute created an expectation of parole release that is entitled to due process protection. *Id.* at 12, 99 S.Ct. 2100. The Nebraska statute provides that the state parole board "shall order [an inmate's] release [on parole] unless it is of the opinion that his release should be deferred." *Id.* at 11, 99 S.Ct. 2100.

The Supreme Court in *Allen* holds that Montana state prisoners possess a liberty interest in parole release that is entitled to due process protection. Like the statute in *Greenholtz*, a Montana parole statute required that the state parole board "shall" release a prisoner on parole upon making certain findings concerning the prisoner's rehabilitation. *See Allen*, 482 U.S. at 376, 107 S.Ct. 2415. The Supreme Court holds that the Montana statute created " 'a presumption that parole release will be granted' when the designated find-

ings are made." *Id.* at 377–78, 107 S.Ct. 2415 (quoting *Greenholtz*, 442 U.S. at 12, 99 S.Ct. 2100).

*Allen* and *Greenholtz* suggest that the mandatory language in § 4211(c)(1) creates an expectation of parole termination that is entitled to some procedural protections. *See Bowles v. Tennant*, 613 F.2d 776, 778 (9th Cir.1980) (holding that the Parole Act creates, at most, a liberty interest entitled to no more protection of due process than that the Supreme Court held to apply to the Nebraska parole statute in *Greenholtz*). *Tatum* does not contradict this implication but focuses instead on the nature of the remedy that is available when that interest is infringed.

By its own terms, § 4211(c)(1) indicates that the liberty interest created is not an absolute expectation of termination of parole supervision. Section 4211(c)(1) states that after five years on parole release the Commission shall terminate supervision *unless* it determines there is a likelihood that the parolee will engage in criminal conduct. The decision to terminate supervision must be made at the five-year mark but always remains subject to certain findings of rehabilitation by the Commission. *Tatum*, 786 F.2d at 963 ("[E]ven if a hearing was not held before the precise five-year date, Congress intended the Commission to exercise its judgment before releasing any parolee from supervision.") (citing *Luther*, 635 F.2d at 616–17; *see also Valona v. United States Parole Comm'n*, 235 F.3d 1046, 1048–49 (7th Cir.2000) (holding that Commission could still make early termination decision even though it unreasonably failed to meet the five-year requirement).

The liberty interest created by the Nebraska and Montana statutes similarly is limited by the parole board's exercise of discretion. The statutes in *Allen* and

*Greenholtz,* like § 4211(c)(1), require a parole board to release a prisoner on parole *unless* the board makes certain countervailing findings. The Supreme Court recognizes that a prisoner's expectation of parole release under these statutes is not absolute but remains subject to the parole board's findings concerning the prisoner's eligibility for parole. *See Allen,* 482 U.S. at 377–78, 107 S.Ct. 2415 (holding Montana statute created " 'a presumption that.parole release will be granted' *when the designated findings are made* ") (emphasis added) (quoting *Greenholtz,* 442 U.S. at 12, 99 S.Ct. 2100); *see also id.* at 376, 107 S.Ct. 2415 ("[T]he presence of official discretion ... is not incompatible with the existence of a liberty interest in parole release when release is *required* after the Board determines (in its broad discretion) that the necessary prerequisites exist."). *Allen* and *Greenholtz* do not suggest, as Benny argues, that a delay in making the required parole decisions automatically entitles a prisoner to a particular decision.

*Allen* does not undermine *Tatum's* holding that a delay by the Commission in making an early termination decision does not result in automatic release.[5]

## IV

Benny alleges two instances of denial of due process in the parole revocation process. He argues that the Commission could have summoned him for a revocation hearing rather than arrest him, and that the decision to arrest was made in bad faith. Benny complains that the Commission failed to promptly make a probable cause determination after taking him into custody.

■ A parolee's conditional liberty is entitled to due process protection under the Fifth and Fourteenth Amendments. *See Morrissey v. Brewer,* 408 U.S. 471, 482, 485–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (holding that parolee. may not be deprived of conditional liberty without the basic due process safeguards of notice, prompt preliminary determination, hearing, counsel, confrontation and an opportunity to present evidence).

### A.

■ When faced with a parolee alleged to have violated parole, the Commission has discretion either to serve a summons or to issue a parole violator warrant and take the parolee into custody. 18 U.S.C. § 4213(a) (1984). The Commission chose the latter option in Benny's case. We do not have jurisdiction to review such a discretionary act by the Commission other than to consider whether the decision was so arbitrary or capricious as to violate due process. *Wallace,* 802 F.2d at 1551–52.

■ Benny alleges that his probation officer harbored extreme personal animosity against him and believed that Benny had not been adequately punished for his crime. Even if Benny's accusations prove true, he fails to show that the probation officer's animosity affected the decision to arrest.

The probation officer did not unilaterally make the decision to arrest. He only so recommended. A case analyst at the Commission reviewed the charges and evi-

---

5. The Fifth Circuit also rejects the argument that *Allen* implicitly overrules *Luther* and *Tatum,* albeit on different reasoning. The court reasons that "[t]he question whether there is a liberty interest associated with the parole statute [as decided in *Allen*] ... is simply irrelevant to the statutory interpretation made in [*Luther* ] . . . . Penix cannot assert an unassailable property interest in his incorrect interpretation of § 4211(c)(1) merely because there is mandatory language in the statute." *Penix,* 979 F.2d at 390.

dence, and concurred in the recommendation to issue a parole violator warrant. The Commission, acting through a regional commissioner, ultimately decided to issue the warrant. *See* 28 C.F.R. 2.44(a) ("A summons or warrant may be issued or withdrawn only by the Commission, or a member thereof."). Benny presents no evidence that personal bias infected the recommendation of the case analyst or the decision of the regional commissioner. The Commission in fact had rejected a prior recommendation by Benny's probation officer to arrest Benny and commence revocation proceedings for the alleged parole violations in June 1995. The Commission opted instead to reprimand Benny on that occasion.

The Commission's decision to issue a parole violator warrant and arrest Benny was not arbitrary or capricious in violation of Benny's due process rights.

### B.

Benny argues that the Commission failed to promptly conduct a preliminary interview after his arrest. The preliminary interview was conducted 31 days after Benny was taken into custody.

■ A parolee arrested pursuant to a parole violator warrant is entitled to a preliminary interview "without unnecessary delay" to determine whether there is probable cause for the charged parole violations. 18 U.S.C. § 4214(a)(1)(A) (1984); *see also Morrissey*, 408 U.S. at 485, 92 S.Ct. 2593 ("[D]ue process would seem to require that some minimal inquiry be conducted ... as promptly as convenient after arrest."). Assuming that a preliminary interview was not promptly conducted, "a due process violation occurs only when [the parolee] establishes" further that the delay " 'was both unreasonable and prejudicial.' " *Vargas v. United States Parole Comm'n*, 865 F.2d 191, 194 (9th Cir.1988) (quoting *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C.Cir.1983)).

■ Benny does not allege, much less present evidence, that he suffered prejudice as a result of the 31-day delay. The record suggests that Benny did not suffer prejudice. A Commission case analyst determined after the preliminary interview that the warrant was indeed valid and supported by probable cause. Benny himself admitted to violating the terms of his parole when he accepted the expedited revocation offer. Absent a showing of prejudice, Benny's detention for 31 days before a preliminary interview was conducted did not violate due process. *See Vargas*, 865 F.2d at 194 ("[A] preliminary hearing delay of 40 days without any evidence of prejudice is not unreasonable."); *Ellis v. District of Columbia*, 84 F.3d 1413, 1424 (D.C.Cir.1996) (holding that due process is satisfied where Commission holds revocation hearing, without any preliminary interview, within 30 days of arrest).

### V

■ Benny alleges that the Commission improperly imposed new special conditions in his second parole release. He focuses on a discrepancy between the parole certificate issued on February 19, 1999 and a subsequently issued nunc pro tunc parole certificate. This claim lacks merit.

The expedited revocation offer contemplated that Benny's second parole release would be subject to the same special conditions imposed in the first parole release. The February parole certificate omitted some of the special conditions that were listed in the expedited revocation offer. The Commission issued a nunc pro tunc parole certificate that corrected the omissions. The nunc pro tunc parole certificate accurately reflects the special condi-

tions that were originally stated in the expedited revocation offer.

## VI

The district court properly denied Benny's petition insofar as the petition seeks termination of parole supervision. We construe the petition to also request relief in the form of an early termination hearing and decision by the Commission.[6] The district court did not consider granting such relief. We determine now whether Benny is entitled to an order compelling a hearing and decision.

### A.

The Commission argues that Benny has not served five years of parole release and is not entitled to an early termination hearing and decision. Benny's five-year mark for the first parole release was December 16, 1998. Benny was taken into custody pursuant to a parole violator warrant on November 20, 1998, almost four weeks before reaching the five-year mark. The Commission contends that the execution of the parole violator warrant terminated the accrual of Benny's first parole term before the five-year mark.

■ Neither § 4211(c)(1) nor its implementing regulation, 28 C.F.R. § 2.43(c)(1), indicates that a parolee must serve five continuous years of parole release. The statute states simply that an early termination decision is to be made "five years after each parolee's release on parole." 18 U.S.C. § 4211(c)(1) (1984). The statute provides no guidance in calculating the five-year period except that it excludes from the five-year period "any period of release on parole prior to the most recent such release, [or] any period served in confinement on any other sentence."[7] 18 U.S.C. § 4211(c)(3) (1984).

■ Benny's time in custody does not fall within the meaning of the exclusions stated in § 4211(c)(3). Benny was charged with violating the terms of his parole, not for committing another crime. He was taken into custody by a discretionary act of the Commission. The Commission could instead have issued a summons and allowed Benny to remain on parole release pending the prosecution of the charges. Benny was not, as § 4211(c)(3) requires for tolling, "in confinement on any other sentence." We conclude that the time Benny spent in custody pending parole revocation proceedings had no effect on the accrual of the five-year period. Benny reached the five-year period as defined in § 4211(c)(1) and is entitled to an early termination hearing and decision by the Commission.[8]

---

6. At oral argument Benny's counsel confirmed that the petition does request a hearing as an alternative remedy. The Commission does not dispute this characterization.

7. The Commission argues that 28 C.F.R. § 2.44(d) provides guidance on calculating the five-year period. We disagree. Regulation 2.44(d) states that the execution of a parole violator warrant "operates to bar the expiration of the parolee's sentence .... [and] maintains the Commission's jurisdiction to retake the parolee either before or after the normal expiration date of the sentence." This regulation allows the Commission to suspend the expiration of the parolee's sentence in order to maintain jurisdiction and prosecute revocation proceedings. *Russie v. United States Dep't of Justice*, 708 F.2d 1445, 1448 (9th Cir.1983).

8. The Commission argues that, assuming Benny is entitled to a hearing and decision, holding a hearing now would serve no purpose because Benny could have argued for early termination during the revocation proceeding. We recognize that when a parolee has not been prejudiced from the delay in holding a hearing, relief is not warranted. *See Tatum*, 786 F.2d at 963. On this record, however, we decline to speculate as to whether the acts underlying the revocation of Ben-

### B.

■ Benny's petition seeks a writ of habeas corpus or, alternatively, a writ of mandamus. We did not decide in *Tatum* which of the two writs is the more appropriate method to compel an early termination hearing and decision. *Tatum,* 786 F.2d at 963 n. 4. Other circuits, without elaboration, have stated that an action in the nature of mandamus is the proper choice. *See Penix,* 979 F.2d at 389; *Sacasas,* 755 F.2d at 1535–36; *Luther,* 635 F.2d at 617. *But see Valona v. United States Parole Comm'n,* 165 F.3d 508, 510 (7th Cir.1998) (holding that the most appropriate way to compel an early termination hearing is through the Administrative Procedure Act for review of agency action). The Parole Act's legislative history similarly suggests that a writ of mandamus is proper. 122 Cong. Rec. 5163 (1976) (statement of Rep. Kastenmeier). We also conclude that a writ of mandamus is appropriate but only after determining that habeas corpus is not a proper method to compel a hearing and decision.

A § 2241 habeas petition challenges the execution of a criminal sentence on grounds that a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Benites v. United States Parole Comm'n,* 595 F.2d 518, 520 n. 1 (9th Cir.1979). We have held that a § 2241 habeas petition is generally the proper method for obtaining judicial review of parole decisions. *Izsak v. Sigler,* 604 F.2d 1205, 1206 n. 1 (9th Cir.1979) ("Habeas corpus, an attack on the legality of incarceration and not a collateral attack on judgment, is the proper vehicle for attacking Parole Commission action."). The habeas challenges to parole decisions

that we have recognized have all been premised on a causal link between some alleged improper action by the Commission and the fact or duration of a petitioner's confinement. *See, e.g., Butterfield v. Bail,* 120 F.3d 1023, 1024 (9th Cir.1997) ("[A] challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement."); *Tucker v. Carlson,* 925 F.2d 330, 331–32 (9th Cir.1991) (holding that § 2241 habeas petition was the proper way to challenge Commission's decision not to credit prisoner's time in state custody toward shortening his federal sentence); *Berg v. United States Parole Comm'n,* 735 F.2d 378, 379 (9th Cir.1984) (considering on the merits a § 2241 habeas petition challenging Commission's computation of salient factor score for purposes of reparole); *Benites,* 595 F.2d at 520–21 (affirming district court's grant of limited habeas corpus relief in the nature of an order for a new parole hearing when Commission applied the wrong standards in denying parole eligibility); *Elliott v. United States,* 572 F.2d 238, 239 (9th Cir.1978) (stating that challenge to parole board's reliance on inaccurate information in denying parole was appropriately brought as petition for a writ of habeas corpus); *see also Bush v. Pitzer,* 133 F.3d 455, 456–57 (7th Cir.1997) ("[A] prisoner seeking relief under § 2241 must demonstrate that the custody is unlawful, and not just that an administrative official made a mistake in the implementation of a statute or regulation.").

■ Benny's habeas petition does not fit within the spectrum of recognized habeas challenges to parole decisions. He fails to demonstrate that his current cus-

---

ny's parole demonstrate "a likelihood that the parolee will engage in conduct violating any criminal law." 18 U.S.C. § 4211(c)(1)

(1984). The Commission may consider this issue in the first instance in a proper § 4211(c)(1) hearing.

tody violates the Constitution or laws of the United States.[9] The Commission's impropriety lies in being late in determining whether to terminate Benny's parole supervision under the Parole Act's early termination provision. This procedural violation does not affect Benny's current custody.

■ Benny has a right under § 4211(c)(1) to an early termination hearing and decision five years after being released on parole. A violation of § 4211(c)(1) does not entitle him to any *particular* decision. The Commission still retains authority to make the necessary findings of fact concerning Benny's rehabilitation and still maintains discretion to ultimately determine whether to terminate Benny's parole supervision. The Commission may still find that Benny is not sufficiently rehabilitated and consequently deny early termination. Benny's duration of confinement then would stand unaffected by the delay in making an early termination decision.

We do not hold that a habeas petition is never the proper avenue to seek a new parole hearing, even though the Commission may decide upon holding such a hearing to deny or revoke parole. We granted a new parole eligibility hearing in *Benites*, 595 F.2d at 521, and a new parole revocation hearing in *John v. United States Parole Comm'n*, 122 F.3d 1278 (9th Cir.1997). Habeas relief was proper in those cases because, unlike Benny, the petitioners demonstrated the necessary causal link between improper action by the Commission and the fact or duration of their custody. *See John*, 122 F.3d at 1284 (holding Commission deprived petitioner of due process by denying opportunity to cross-examine adverse witnesses during parole revocation

hearing); *Benites*, 595 F.2d at 521 (holding Commission applied wrong criteria in determining youth offender's parole eligibility).

The fact or duration of Benny's custody is not causally linked to the Commission's delay in making an early termination decision. We conclude that habeas corpus is not the proper process to compel the Commission to hold an early termination hearing and make a decision as prescribed by § 4211(c)(1).

### C.

■ District courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is proper where " '(1) the plaintiff's claim is clear and certain; (2) the [defendant's] duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available.' " *Oregon Natural Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir.1995) (internal quotation marks omitted) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)). A petition for a writ of mandamus pursuant to 28 U.S.C. § 1361 is the proper method to compel the Commission to hold an early termination hearing and make a decision pursuant to § 4211(c)(1). *Cf. Thompson v. Crabtree*, 82 F.3d 312, 313 n. 1, 316 (9th Cir.1996) (holding writ of mandamus under 28 U.S.C. § 1361 was proper to compel a revocation hearing where Commission failed to hold a hearing within

---

**9.** Even though Benny is currently released on parole, he is still "in custody" for purposes of habeas corpus jurisdiction. *See Tisnado v.*

*United States,* 547 F.2d 452, 455 (9th Cir. 1976).

90 days of executing a parole violator warrant as required by 18 U.S.C. § 4214).[10]

## VII

Benny's petition sought either a writ of habeas corpus or a writ of mandamus. We affirm the district court's denial of Benny's primary request for termination of supervision. The district court, however, should have granted the petition insofar as it requested a writ of mandamus to order the Commission to hold an early termination hearing and make a decision. *See* Fed. R.Civ.P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."). We vacate the judgment and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED AND REMANDED.**

---

**10.** The availability of a writ of mandamus from the district court precludes us from issuing our own writ of mandamus under the All Writs Act, 28 U.S.C. § 1651. *See Bauman v. United States Dist. Court,* 557 F.2d 650, 654 (9th Cir.1977) (holding one factor in determining whether appellate court should exercise its writ power under the All Writs Act is whether there are other means to attain the relief the petitioner desires).