*1141 BERZON, Circuit Judge,
dissenting:
Neither 11 U.S.C. § 1123(d) nor any. other provision of the Bankruptcy Code provides a definition of “cure” contrary to the one this Court announced in Great Western Bank & Trust v. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber & Supply, Inc.), 850 F.2d 1338, 1340 (9th Cir. 1988). We are therefore bound by this Court’s precedent, according to which New Investments may, in curing its default, pay the pre-default interest rate contained in the promissory note.
Instead of abiding by our longstanding case law, the majority concludes that Congress displaced Entz-White when it passed § 1123(d). Because neither the text of the statute nor the legislative history of § 1123(d) support the majority’s departure, I dissent.
I.
Chapter 11 requires that a debtor’s plan of reorganization “provide adequate means for the plan’s implementation, such as ... curing or waiving of any default.” 11 U.S.C. § 1123(a)(5). In the absence of any statutory definition, this Court held in Entz-White that “[cjuring a default” means “returning to pre-default conditions,” such that any consequences of the default are “nullified.” 850 F.2d at 1340 (quoting Di Pierro v. Taddeo (In re Taddeo), 685 F.2d 24, 26-27 (2d Cir. 1982)). Because curing a default returns the debt- or to the status quo ante, we concluded, “the power to cure under the Bankruptcy Code authorizes a plan to nullify all consequences of default, including avoidance of default penalties such as higher interest.” Id. at 1342.
After this Court decided Entz-White, Congress enacted 11 U.S.C. § 1123(d). Section 1123(d), part of the 1994 amendments to the Bankruptcy Code, provides:
Notwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), . and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.
Pacifica maintains—and the majority agrees—that this provision overruled Entz-White’s holding that a debtor who cures a default, thus “nullifyting] all consequences of’ that default, may repay ar-rearages at the pre-default interest rate. See 850 F.3d at 1342.
Pacifica bears the burden of showing that Congress, in passing § 1123(d), intended to change settled law. Tome v. United States, 513 U.S. 150, 163, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) (quoting Green v. Bock Laundry Mach. Co., 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989)). In determining whether Pacifica has met this burden, we “will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress, intended such a departure.” Hamilton v. Canning, 560 U.S. 505, 517, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) (citations and internal quotation marks omitted).
Pacifica has not carried this burden, as both the statutory text and the legislative history of § 1123(d) support the continuing viability of Entz-White’s holding. The majority opinion errs in concluding otherwise, and, in doing so, wrongly imposes a severe penalty on debtors in New Investments’ situation.
II.
The Bankruptcy Reform Act of 1994, among other things, added nearly identical language regarding how one cures a default to Chapters 11, 12, and 13 of the Bankruptcy Code. Pub. L. No. 103-394, § 305, 108 Stat. 4106 (1994). Like the subsection here at issue, 11 U.S.C. §§ 1222(d) *1142 and 1322(e) provide that, notwithstanding other provisions of the Bankruptcy Code not relevant here, “if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.”
Nowhere did the 1994 amendments define “cure a default” or suggest that this Circuit’s then-operative definition of “cure” was incorrect. Rather, § 1123(d) indicates which materials the parties may consult in determining how to cure a default. Accordingly, as a result of the 1994 amendments, the terms of a cure are circumscribed by the underlying agreement and applicable nonbankruptcy law.
Neither § 1123(d) nor any other provision of the Bankruptcy Code explains where in the underlying agreement to look for the provisions that apply in the event of a cure. If, as Entz-White held, “[cjuring a default” means “returning to pre-default conditions,” 850 F.2d at 1340, the provisions of the agreement setting out thé pre-default interest rate provide the relevant information. If “curing a default” means paying a penalty triggered by the default, the provisions of the agreement addressing higher post-default interest rates establish the relevant requirements. But in Entz-White, we decisively rejected this alternative definition of “cure.” Id. at 1342. We called the creditor’s argument in favor of this reading “spurious,” as it “amountfed] to saying, once more, that the higher rate of interest is not a consequence of default that can be cured.” Id.
In short, the text of § 1123(d) makes clear that New Investments’ cure will be based on the terms of the promissory note, but offers no guidance on which of the note’s provisions governs here. Entz-White provides that guidance, by specifying that a “cure” permits the debtor to “avoid all consequences of the default.” Id. Applying that understanding, it is the pre-default interest provisions of the underlying agreement that govern.. The majority’s conclusion that § 1123(d) overruled. 15⅛-White has no basis in the text of the statute.
III.
The legislative history of § 1123(d) confirms that Congress did not mean to disturb this Court’s holding in Entz-White. In adding § 1123(d), Congress focused on addressing an entirely separate matter— the Supreme Court’s holding in Rake v. Wade, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). H.R. Rep. No. 103-835, at 55 (1994); see also S. Rep. No. 103-168, at 53 (1993) (discussing the parallel provision included in the Senate bill).
In Rake, the Supreme Court held that an oversecured creditor was entitled to pre- and post-confirmation interest on mortgage arrearages paid to cure a default under a Chapter 13 plan. 508 U.S. at 471-75, 113 S.Ct. 2187. This reading of the relevant provisions of the Bankruptcy Code, §§ 506(b), 1322(b), and 1325(a)(5), permitted secured creditors to collect interest on top of the interest payments paid by debtors under their mortgages. Id. at 470-75, 113 S.Ct. 2187.
Congress overtly rejected this result in enacting § 1123(d). H.R. Rep. No. 103— 835, at 55. The amendments to § 1123 were contained in § 305 of the Bankruptcy Reform Act of 1994, which is entitled “Interest on Interest.” Pub. L. No. 103-394, § 305, 108 Stat. 4106, 4134 (1994). The relevant House Report states that the amendments “will have the effect of overruling the decision of the Supreme Court in Rake v. Wade,” because Rake “had the effect of providing a windfall to secured creditors” by. giving them “interest on interest payments, and interest on the late charges and other fees, even where appli *1143 cable laws prohibit[] such interest and even when it was something that was not contemplated by either party in the original transaction.” H.R. Rep. No. 103-835, at 55.
Far from repudiating Entz-White ⅛ holding, the House Report reiterated Entz-White ⅛ interpretation of “cure,” stating, “[i]t is the Committee’s intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.” Id. The legislative history thus indicates, at the very least, that the new provision was not meant sub silentio to enact a definition of “cure” conflicting with that adopted in Entz-White. It also suggests that the relevant provisions of the “underlying agreement” for a “cure” are those that would have applied “if the default had never occurred.” See id.
In sum, the pertinent 1994 amendments eliminated the possibility of a “court contrived windfall” for secured creditors. Id. Pacifica’s challenge to the Bankruptcy Court’s confirmation order does not implicate the concern that animated Congress. Like the text of the statute, the legislative history in no way suggests that Entz-White ’s definition of “cure” is incorrect or was overruled.
Here, the underlying agreement provides both pre- and post-default interest rates. As the statute requires, we look to that agreement in determining which rates may apply. And in selecting which provision of the contract governs, we rely on our precedent and use the pre-default rate. New Investments therefore could cure the default by paying interest on the debt at the pre-default rate.
IV.
Notwithstanding its recitation of the relevant text and legislative history, the majority somehow concludes that Entz-White is no longer controlling. Relying on an incorrect interpretation of § 1123(d), the majority’s opinion mistakenly upsets this Circuit’s binding precedent.
A three judge panel of this Court' is “bound by decisions of prior panels unless an en banc decision, Supreme Court decision or subsequent legislation undermines those decisions.” Gen. Const. Co. v. Castro, 401 F.3d 963, 975 (9th Cir. 2005) (quoting Benny v. U.S. Parole Comm’n, 295 F.3d 977, 983 (9th Cir. 2002)). No act of Congress or intervening higher authority justifies the panel’s departure from our precedent here.
As discussed, Congress has not defined “cure the default” in the years since we decided Entz-White. There is thus no “clear indication that Congress intended .., a departure,” Hamilton, 560 U.S. at 517, 130 S.Ct. 2464, from this Court’s past practice. The interpretation of the , statute best supported by the legislative record favors continuity. No intervening case law from the Supreme Court or the Ninth Circuit calls Entz-White into doubt. On the contrary, this Court has continued to rely on Entz-White’s holding. See Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1075 (9th Cir. 2002) (concluding Entz-White precluded a creditor’s argument “that a plan intended to nullify the consequences of a default (thereby avoiding the higher post-default interest rate) does not meet the purposes of the • Bankruptcy Code"); cf. Gen. Elec. Capital Corp., v. Future Media Prods. Inc., 547 F.3d 956, 960-61 (9th Cir. 2008) (treating Entz-White as good law, but concluding it did not apply to a claim paid in full as a result of asset sales outside of a Chapter 11 plan).
Stare decisis thus requires us to apply Entz-White and hold that New Investments “is entitled' to’ avoid all consequences of the default—including higher *1144 post-default interest rates.” 850 F.2d at 1342. I would affirm the Bankruptcy Court order confirming New Investments’ plan of reorganization, which reflects the pre-de-fault interest rate included in the promissory note.