**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRENT SHERMAN,
      *Petitioner-Appellant,*

v.

UNITED STATES PAROLE
COMMISSION; ROBERT A. HOOD,
Warden; CHARLES A. DANIELS,
Warden,

      *Respondents-Appellees.*

No. 05-35364

D.C. No.
CV-05-00008-JAR

OPINION

Appeal from the United States District Court
for the District of Oregon
James A. Redden, District Judge, Presiding

Argued and Submitted
March 9, 2006—Portland, Oregon,

Filed September 4, 2007

Before: Melvin Brunetti, Thomas G. Nelson, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Brunetti

11253

**COUNSEL**

Christine Stebbins Dahl, Assistant Federal Defender, Portland, Oregon, for the petitioner-appellant.

Kenneth C. Bauman (brief), Assistant United States Attorney, Portland, Oregon; and Kelly A. Zusman (argued), Assistant United States Attorney, Portland, Oregon, for the respondents-appellees.

---

**OPINION**

BRUNETTI, Circuit Judge:

We consider whether an administrative warrant issued pursuant to 18 U.S.C. § 4213(a) for the retaking of an alleged parole violator is subject to the oath or affirmation requirement of the Fourth Amendment's Warrant Clause. We hold it is not and therefore affirm the denial of petitioner's habeas challenge to his detention on an unsworn parole violator warrant.

**I**

Petitioner Brent Sherman is a federal inmate currently being held by the Bureau of Prisons at the Federal Detention Center in Sheridan, Oregon. In 1982, he was sentenced to twenty-years imprisonment for two counts of bank robbery and one year for failure to appear. In 1985, he escaped and committed armed robbery of another bank, crimes for which he received five years and twenty years, respectively. Because his offenses were committed prior to November 1, 1987, the effective date of the Sentencing Reform Act of 1984 which replaced most forms of "parole" with "supervised release," Sherman received "old law" sentences under the former statutory regime, which remains in effect as to such offenders. *See*

*United States v. Kincade*, 379 F.3d 813, 817 n.2 (9th Cir. 2004) (en banc); *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 981 n.2 (9th Cir. 2002).

Paroled for the first time in 1993, Sherman's parole was revoked two years later for possession of a controlled substance, extortion, and unlawful use of a weapon. He was paroled again in August 1999 and five years later requested a hearing for early termination under 18 U.S.C. § 4211(c)(1). *See Benny*, 295 F.3d at 982-83. Instead of granting his request, the United States Parole Commission once again initiated revocation proceedings.

In November 2004, the Commission issued a parole violator warrant for Sherman's retaking pursuant to 18 U.S.C. § 4213(a)(2) on the basis of two alleged parole violations: sexual assault (rape) in 2000, and fraud in 2000 and 2002. It is undisputed that the warrant application containing the allegations was unsworn. In December 2004, the U.S. Marshals Service took Sherman into custody on the warrant, and the following month he filed the underlying habeas petition under 28 U.S.C. § 2241 challenging his detention on the ground that the warrant was invalid under the Fourth Amendment because it was not supported by oath or affirmation.

While his habeas petition was pending, Sherman's parole revocation proceedings continued before the Commission. After a preliminary interview, the interviewing officer recommended a finding of probable cause on the fraud charge, but not on the sexual assault charge. The Commission apparently took a somewhat different view. It found probable cause that Sherman had violated his parole, citing both charges, and continued to hold him pending a final hearing on revocation.

Meanwhile, in April 2005 the district court denied Sherman's habeas petition. In a published opinion, *Sherman v. Reilly*, 364 F. Supp. 2d 1216 (D. Or. 2005), the court held that Sherman was lawfully detained on an unsworn warrant

because, unlike judicial warrants, parole violator warrants issued under 18 U.S.C. § 4213(a) are administrative and not subject to the Warrant Clause of the Fourth Amendment. The court accordingly declined to extend our decision in *United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004), in which we held that a *supervised release* "warrant" within the meaning of 18 U.S.C. §§ 3583(i) and 3606 must comply with the Warrant Clause. Sherman timely appealed.

Before the parties filed their briefs on appeal, however, the Commission revoked Sherman's parole based on the fraud charge while making no findings concerning the sexual assault charge. He remains incarcerated with a presumptive re-parole date of October 13, 2007. The projected full-term date on his aggregate sentence is November 25, 2015.

## II

The Government asserted below that Sherman's habeas petition challenging his detention on the unsworn parole violator warrant became moot when the Commission conducted a preliminary hearing and found probable cause that Sherman violated his parole. It also asserted mootness in its brief on appeal, by then predicating the argument on the Commission's intervening revocation of Sherman's parole. At oral argument, however, the Government conceded that this case is within the "capable of repetition, yet evading review" exception to the mootness doctrine. Undertaking our independent obligation to determine our subject-matter jurisdiction in the face of possible mootness, *see Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999), we find the Government's concession to be well taken.

The capable of repetition, yet evading review exception has been applied to permit appellate review of constitutional or statutory challenges to pretrial and other initial proceedings despite the regular progression of further proceedings making it "no longer possible to remedy the particular grievance giv-

ing rise to the litigation." *United States v. Howard*, 480 F.3d 1005, 1009 (9th Cir. 2007). For instance, in *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975), the Court determined that the respondents' convictions did not preclude review of their challenge to their pretrial detentions, which lacked a judicial determination of probable cause. In *Howard*, 480 F.3d at 1009-10, we applied *Gerstein* and held that the conclusion of pretrial proceedings did not preclude us from reviewing a courtroom security policy of shackling pretrial detainees during initial appearances. And in *United States v. Woods*, 995 F.2d 894, 896 (9th Cir. 1993), we applied the exception to an inmate's challenge to the revocation of his conditional release under 18 U.S.C. § 4246(f), despite the fact his confinement at the time of appeal was "not due to the revocation order being challenged." By the time we heard his appeal, Woods had been again granted conditional release and then re-confined under another revocation order.

As in those contexts, a parolee's initial detention solely on the authority of a parole violator warrant is by nature temporary and is "not likely to persist long enough to allow for the completion of appellate review" before the Commission either releases the parolee or takes further action providing superceding authority for the detention. *Woods*, 995 F.2d at 896; *accord Gerstein*, 420 U.S. at 110 n.11. Indeed, a parole violator summoned or retaken under 18 U.S.C. § 4213 is entitled to a preliminary hearing on probable cause "without unnecessary delay" and a revocation hearing "within sixty days of such determination of probable cause." *Id.* § 4214(a)(1)(A), (B). As this case exemplifies, these statutory requirements virtually guarantee the revocation process will be concluded before appellate review of the initial retaking is feasible.

This case is also capable of repetition. The Parole Commission has not retreated from its policy of issuing warrants based on unsworn allegations, and Sherman is scheduled for presumptive re-parole in October 2007 with over eight years remaining on his sentence. During that period of release, his

liberty will continue to be conditioned on the Commission's ability to issue a parole violator warrant and retake him based on unsworn allegations. *Cf. Woods*, 995 F.2d at 896 (applying the exception where the defendant remained subject to a conditional release order, the violation of which led to the revocation order on appeal); *Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (holding that the exception did not apply because the expiration of petitioner's sentence negated any reasonable expectation of another round of parole and revocation). Moreover, because the Commission's policy is ongoing and generally applicable to all federal parolees subject to retaking, the proper construction of 18 U.S.C. § 4213(a) in relation to the Fourth Amendment is "an issue of continuing and public importance." *Woods*, 995 F.2d at 896.

**[1]** For these reasons we agree with the parties that Sherman's appeal from the denial of his habeas petition should not be dismissed as moot. We hold that despite the Parole Commission's issuance of a revocation order providing superceding authority for Sherman's present confinement, we have jurisdiction to review his initial retaking and detention on a parole violator warrant under the exception for cases that are "capable of repetition, yet evading review."

## III

**[2]** The Fourth Amendment rights of parolees are hardly uncharted waters. By now it is clear that parolees are protected against unreasonable searches and seizures. *Samson v. California*, 126 S. Ct. 2193, 2197, 2198 n.2 (2006); *Latta v. Fitzharris*, 521 F.2d 246, 248-49 (9th Cir. 1975) (en banc). But their rights also are not coextensive with those of ordinary citizens. We have held that "probable cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid." *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991).

Sherman's habeas petition raises a closely related yet distinct question: When the United States Parole Commission

issues a parole violator warrant pursuant to 18 U.S.C. § 4213(a) for the retaking of a federal parolee, must that warrant comply with the Warrant Clause of the Fourth Amendment and therefore be "supported by Oath or affirmation"? Because the question has both statutory and constitutional dimensions, we consider first whether Congress incorporated the Fourth Amendment definition of a "warrant" into § 4213 before addressing whether compliance with the Warrant Clause is otherwise constitutionally required.

## A

**[3]** Although we have interpreted 18 U.S.C. § 4213(a) in other contexts, *e.g.*, *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 985 (9th Cir. 2002) (addressing the Commission's discretionary power to issue a warrant instead of a summons), we have yet to address whether § 4213 requires a parole violator warrant to be supported by sworn facts. "In construing a statute as a matter of first impression, we first look to the statutory language: 'The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter.' " *United States v. Morales-Alejo*, 193 F.3d 1102, 1105 (9th Cir. 1999) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). Section 4213 provides:

> (a) *If any parolee is alleged to have violated his parole, the Commission may—*
>
>> (1) summon such parolee to appear at a hearing conducted pursuant to section 4214; or
>>
>> (2) *issue a warrant and retake the parolee* as provided in this section.
>
> (b) Any summons or warrant issued under this section shall be issued by the Commission as soon as

practicable after discovery of the alleged violation, except when delay is deemed necessary . . . .

(c) Any summons or warrant issued pursuant to this section shall provide the parolee with written notice of—

> (1) the conditions of parole he is alleged to have violated as provided under section 4209;

> (2) his rights under this chapter; and

> (3) the possible action which may be taken by the Commission.

(d) Any officer of any Federal penal or correctional institution, or any Federal officer authorized to serve criminal process within the United States, to whom a warrant issued under this section is delivered, shall execute such warrant by taking such parolee and returning him to the custody of the regional commissioner, or to the custody of the Attorney General, if the Commission shall so direct.

18 U.S.C. § 4213 (italics added).

On its face, despite setting forth several requirements for the issuance of a parole violator warrant, § 4213 makes no mention of an oath or affirmation requirement. Instead, subsection (a) expressly authorizes the Commission to issue a warrant upon a mere allegation of a parole violation. The statute's only other express requirements regard the issuer ("the Commission"), the timing ("as soon as practicable after discovery of the alleged violation"), and the contents of the warrant ("written notice" of the alleged violation, the parolee's rights, and possible consequences). *Id.* § 4213(a)-(c). The implementing regulation is in accord, adding only that "satis-

factory evidence" of the alleged violation is required. 28 C.F.R. § 2.44(a).

Nevertheless, Sherman contends that we should read the lone term "warrant" as implicitly incorporating the Fourth Amendment definition. For this argument he relies on *United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004), a *supervised release* case in which we interpreted the term "warrant" in 18 U.S.C. § 3583(i) as manifesting Congress' intent to incorporate the requirements of the Warrant Clause. He also invokes the general principle of statutory construction that the same language should be given a consistent interpretation across different statutes, citing *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004).

While we do not necessarily disagree with either premise, the issue is not so simple. Considering isolated terms without regard to the complete statutory language can be misleading, as can narrowly focusing on the holding of our opinions without due regard to the intricacies of our reasoning. Certainly *Vargas-Amaya* is a highly relevant precedent here given obvious similarities between the issues presented. But closer examination of that opinion reveals a textual analysis of the supervised release statutes that, when applied to the distinct language of the parole statutes, leads to precisely the opposite result.

**1**

In *Vargas-Amaya* we addressed whether the district court lacked jurisdiction under § 3583(i) to revoke supervised release after the release term had expired because the warrant on which the defendant was arrested was not supported by oath or affirmation. That statute provides:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a

> term of imprisonment and . . . a further term of supervised release, extends beyond the expiration of the term of supervised release . . . if, before its expiration, *a warrant or summons has been issued on the basis of an allegation of such a violation.*

18 U.S.C. § 3583(i) (italics added). Focusing narrowly on the word "warrant," we invoked two canons of statutory construction: "in the absence of a statutory definition, a term should be accorded its ordinary meaning"; and "when Congress uses a term of art, such as 'warrant,' unless Congress affirmatively indicates otherwise, we presume Congress intended to incorporate the common definition of that term." *Vargas-Amaya*, 389 F.3d at 904. Accordingly, at the outset we presumed that Congress "incorporated the Fourth Amendment's prohibition against the issuance of warrants based on something less than probable cause supported by sworn facts," and agreed with petitioner that "the plain meaning of the term 'warrant' means a document that is based upon probable cause and supported by sworn facts." *Id.*; *see also* U.S. Const. amend. IV ("no Warrants shall issue, but upon probable cause, supported by Oath or affirmation").

But that is only the tip of the iceberg. As we also noted, these canons of statutory construction may be overcome if "Congress affirmatively indicates otherwise" or gives " 'contrary direction.' " *Vargas-Amaya*, 389 F.3d at 904 (quoting *Carter v. United States*, 530 U.S. 255, 264 (2000)). In other words, the presumption is rebuttable and therefore requires consideration of the statutory context and the surrounding terms. After all, terms do not appear in isolation and a statute's remaining language may place its terms of art in a different light and alter the plain meaning of the statue as a whole. *See Leocal*, 543 U.S. at 9. Of course, after accordingly expanding our analysis of the supervised release statutes in *Vargas-Amaya*, we happened to find confirmation of the presumption rather than contrary direction. But because our opinion in that case is fundamentally one of statutory construction

and we dealt with an entirely separate statutory scheme, our methodology rather than our conclusion is more pertinent to our analysis here.

Perhaps most remarkable about our analysis is that, despite initially applying the aforementioned presumptions regarding the implied meaning of the term "warrant," we went on to determine that § 3583(i) "does not relate to the requirements for issuing a warrant at all." *Vargas-Amaya*, 389 F.3d at 906. In considering the operative phrase "if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation," 18 U.S.C. § 3583(i), we rejected the Government's contention that the "allegation" clause had the effect of narrowly defining the term "warrant" as "something less than that required by the Fourth Amendment." *Vargas-Amaya*, 389 F.3d at 905-06. We reasoned that Congress' use of the past tense in § 3583(i) ("has been issued") rather than the present tense ("[may be] issued") indicates that § 3583(i) merely enumerates the prior issuance of a valid supervised release warrant as a jurisdictional prerequisite without prescribing the requirements for issuing such a warrant. *Id.* For those requirements we looked instead to § 3606, in which Congress did use the present tense in discussing the issuance of such warrants.

> Congress' use of the past tense [in § 3583(i)] stands in contrast to the Fourth Amendment, and Rules 4, 9, and 41 of the Federal Rules of Criminal Procedure all of which discuss the requirements for issuing an arrest warrant in the present tense. *See* U.S. Const. amend. IV ("no Warrants shall issue"); Fed. R. Crim. P. 4(a) ("the judge must issue an arrest warrant"); Fed. R. Crim. P. 9(a) ("The court must issue a warrant"); Fed. R. Crim. P. 41(d) ("a magistrate judge or a judge . . . must issue the warrant if there is probable cause"). The use of the past tense in § 3583(i) implies that the statute does not relate to the requirements for issuing a warrant at all, but

> rather solely pertains to the court's jurisdiction if an arrest warrant has already been validly issued. Another statute describes in the present tense when an arrest warrant may be issued for a violation of supervised release and provides that "If there is probable cause to believe that a . . . person on supervised release has violated a condition of his . . . release, . . . the court . . . may issue a warrant for the arrest of a . . . releasee for violation of a condition of release." 18 U.S.C. § 3606.

*Id.* at 906; *accord United States v. Garcia-Avalino*, 444 F.3d 444, 446 n.3 (5th Cir. 2006) (stating that § 3583 is a jurisdictional provision while "section 3606 actually governs the issuance of warrants for the arrest of probationers or supervised releasees")

Of course, despite our determination that § 3583(i) itself is not controlling regarding the meaning of the term "warrant," § 3606 confirmed the presumption that Congress intended to incorporate the Fourth Amendment definition. Reasoning that §§ 3583(i) and 3606 must be read consistently regarding the definition of a supervised release "warrant" and noting that § 3606 includes an express "probable cause" requirement, we concluded:

> The only reasonable inference is that Congress was aware of the Fourth Amendment and incorporated its requirement that a warrant be based "upon probable cause" in both statutes. By extension, if Congress intended to incorporate the "probable cause" portion of the Warrant Clause in each statute, it must have also intended to incorporate the "Oath or affirmation" portion of the Clause.

*Vargas-Amaya*, 389 F.3d at 905 n.2.

## 2

The plain language of § 4213 may seem superficially similar to the supervised release statutes we considered in *Vargas-Amaya*, but on closer inspection it is structurally and substantively distinct and not amenable to the same inferences. We therefore cannot reach the same conclusion that Congress intended to incorporate the requirements of the Warrant Clause of the Fourth Amendment.

To begin, by our reasoning in *Vargas-Amaya*, § 4213's plain language makes it comparable not with § 3583(i) but with § 3606 insofar as the statute itself prescribes the requirements for issuing a valid warrant. Congress' use of the present tense throughout § 4213(a)-(c) ("the Commission may . . . issue a warrant," "Any . . . warrant . . . shall be issued," and "Any . . . warrant . . . shall provide") stands in stark contrast to the past tense construction of § 3583(i) and instead parallels the present tense construction of § 3606 and Federal Rules of Criminal Procedure 4(a), 9(a), and 41(d).

But that is also where any parallels end. Read in context, Congress did not use the term "warrant" in the same sense in both regimes. Section 4213 expressly authorizes only "the Commission" to issue a parole violator "warrant" and thereby provides for an *administrative warrant*. 18 U.S.C. § 4213(a). Only in replacing parole with supervised release did Congress shift issuing authority to "the court" and thereby use the term "warrant" in the ordinary sense of a judicial warrant. 18 U.S.C. § 3606; *see Gozlon-Peretz v. United States*, 498 U.S. 395, 400-01 (1991); *see also* Fed. R. Crim. P. 4(a) ("the judge"); Fed. R. Crim. P. 9(a) ("The court"); Fed. R. Crim. P. 41(d)(1) ("a magistrate judge"). In certain circumstances the distinction can be significant. *See Griffin v. Wisconsin*, 483 U.S. 868, 877-78 (1987) (distinguishing between "administrative search warrants" and "constitutionally mandated judicial warrants"); *Abel v. United States*, 362 U.S. 217, 232 (1960) (characterizing a deportation arrest warrant under the Immi-

gration and Nationality Act of 1952 as "an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment"); *United States ex rel. Randazzo v. Follette*, 418 F.2d 1319, 1322 (2d Cir. 1969) (holding that a parole violator warrant designated as "administrative" under New York law was not subject to ordinary Fourth Amendment safeguards). Thus, we question the present applicability of the "term of art" presumption we applied in *Vargas-Amaya* where "warrant" was used in the judicial sense.

Moreover, in § 4213 Congress omitted any express reference to the Warrant Clause's requirements in describing the issuance of a parole violator warrant. By contrast, § 3606 and Rules 4, 9, and 41 all expressly require "probable cause" for the issuance of an arrest warrant. *See* 18 U.S.C. § 3606 ("probable cause to believe that a probationer or a person on supervised release has violated a condition of his probation or release"); Fed. R. Crim. P. 4(a) ("probable cause to believe that an offense has been committed"); Fed. R. Crim. P. 9(a) ("probable cause that an offense has been committed"); Fed. R. Crim. P. 41(d)(1) ("probable cause to search for and seize a person or property"). Additionally, Rules 4, 9, and 41 also contain clear references to a sworn facts requirement. *See* Fed. R. Crim. P. 4(a) (referencing "the complaint or one or more affidavits filed with the complaint"); Fed. R. Crim. P. 9(a) ("one or more affidavits accompanying the information"); Fed. R. Crim. P. 41(d) ("an affidavit or other information," which may consist of "sworn testimony").

The unique omission of any such references to the Warrant Clause in § 4213 is significant. In *Vargas-Amaya* we interpreted the express "probable cause" requirement within § 3606 as an implicit incorporation of the full Warrant Clause, which we then imputed to § 3583(i). 389 F.3d at 904-05 & n.2. The same premise is simply not available to us in the case of § 4213. Congress' use of the term "warrant" is accompanied by several express requirements for its valid issuance, yet none reference the Warrant Clause. While § 3606 and the

Federal Rules exemplify Congress' ability to reference and incorporate the Warrant Clause's requirements when intended, the omission of such requirements and inclusion of others in § 4213 indicates a contrary intent.

[4] The natural reading of § 4213 is that the Commission is authorized to issue a parole violator warrant "[i]f any parolee is alleged to have violated his parole"—period. 18 U.S.C. § 4213(a). Although in *Vargas-Amaya* we determined that § 3583(i)'s "allegation" clause was largely irrelevant because of the statute's past-tense construction, the converse is true here. Indeed, we expressly noted in *Vargas-Amaya* that if Congress were to use the present tense in conjunction with an allegation clause, that would indicate its intent to require only an allegation of a parole violation rather than full satisfaction of the Fourth Amendment:

> The government argues that Congress specifically defined warrant as something less than that required by the Fourth Amendment—and, thus, that a warrant based on unsworn facts is acceptable—because of the phrase "on the basis of an allegation of" a violation of supervised release. 18 U.S.C. § 3583(i) . . . . To effect its reading of the statute, the government asks us to rewrite § 3583(i) to mean that "a warrant or summons [may be] issued on the basis of an allegation of such a violation." However, we are not at liberty to rewrite the words chosen by Congress.

*Vargas-Amaya*, 389 F.3d at 905-06 (brackets in original). Of course, neither are we at liberty to rewrite the words chosen by Congress as to § 4213(a), which actually contains a "may issue" construction. Thus, by *Vargas-Amaya*'s reasoning, we must adopt as to § 4213(a) the very reading we rejected as to § 3583(i).

### 3

Contrary to our suggestion in *Vargas-Amaya*, 389 F.3d at 904, congressional authorization for the issuance of warrants

outside the scope of the Fourth Amendment's Warrant Clause is not unprecedented. For instance, as noted above, in 1960 the Supreme Court interpreted former INA § 242(a), 8 U.S.C. § 1252(a), as "giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment." *Abel*, 362 U.S. at 232. Much like § 4213, the immigration statute as it then existed authorized an executive official to issue an arrest warrant without reference to any Warrant Clause requirements.

> Pending a determination of deportability in the case of any alien . . . , *such alien may, upon warrant of the Attorney General, be arrested and taken into custody*. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. But *such bond or parole . . . may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability* . . . .

8 U.S.C. § 1252(a) (1976) (emphasis added); Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 242(a), 66 Stat. 163, 208-09 (1952). Indeed, deportation statutes going back to 1798 "have ordinarily authorized the arrest of deportable aliens by order of an executive official," evidencing an "overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens." *Abel*, 362 U.S. at 233.

The same can be said of administrative arrests of parole violators, which Congress has authorized on the warrant of an

executive official without requiring compliance with the Fourth Amendment's Warrant Clause since the inception of federal parole in 1910. Parolees are legislatively "assigned to a unique status in our legal system." *United States v. Polito*, 583 F.2d 48, 54 (2d Cir. 1978). "A parolee is a convicted criminal who has been sentenced to a term of imprisonment and who has been allowed to serve a portion of that term outside prison walls" while subject to various conditions of release. *Id.* Under the original 1910 Act, though not in physical custody, a parolee was "to remain, while on parole, in the legal custody and under the control of the warden of such prison from which paroled . . . until the expiration of the term or terms specified in his sentence." Act of June 25, 1910, ch. 387, § 3, 36 Stat. 820 (codified at 18 U.S.C. § 716). Thus, a parole violator was viewed by Congress not as an ordinary citizen subject to arrest under a judicial warrant but as a "prisoner" subject to administrative "retaking" by the warden already having legal custody over him. As amended in 1930 with only technical changes, 18 U.S.C. § 717, the original predecessor to today's § 4213, provided:

> If the warden of the prison or penitentiary from which said prisoner was paroled or the Board of Parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, at any time within the term or terms of the prisoner's sentence, may issue his warrant to any officer hereinafter authorized to execute the same for the retaking of such prisoner.

18 U.S.C. § 717 (1946); Act of June 25, 1910, ch. 387, § 4, 36 Stat. 820 (original enactment); Act of May 13, 1930, ch. 255, § 1, 46 Stat. 272 (amendment).

Courts interpreting this legislation soundly rejected attempts by parole violators to claim certain rights enjoyed by ordinary citizens. In 1923, the Supreme Court characterized the nature of parole by stating that "[w]hile this is an amelio-

ration of punishment, it is in legal effect imprisonment" and that a parole violator's "status and rights were analogous to those of an escaped convict." *Anderson v. Corall*, 263 U.S. 193, 196 (1923). Accordingly, in the 1930s the Fourth and D.C. Circuits relying on *Anderson* denied the habeas petitions of two parolees who, like Sherman, challenged their detentions on unsworn warrants. Both circuits squarely held that a parole violator warrant issued under § 717 need not be supported by oath or affirmation. *Jarman v. United States*, 92 F.2d 309, 311 (4th Cir. 1937); *Story v. Rives*, 97 F.2d 182, 188 (D.C. Cir. 1938) (also rejecting the claim that probable cause was required); *see also United States ex rel. Nicholson v. Dillard*, 102 F.2d 94, 96 (4th Cir. 1939) ("Nothing in any statute requires anything more; and in the reason of the case nothing more was required."). Despite Congress' use of the term "warrant" in § 717, the Fourth Circuit clearly stated that "the warrant in question was not a warrant . . . as contemplated in the Fourth Amendment to the Constitution." *Jarman*, 92 F.2d at 311.

If, contrary to this interpretation, Congress had actually intended to incorporate the Warrant Clause's requirements, it could have expressed that intent in subsequent legislation. But despite recodifying the parole statutes in 1948, Congress made no such changes. Like the 1910 Act, the 1948 Act continued to provide that a "parolee shall . . . remain, while on parole, in the legal custody and under the control of the Attorney General," and that "[a] warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof" and shall be executed "by taking such prisoner and returning him to the custody of the Attorney General." Act of June 25, 1948, ch. 645, 62 Stat. 854-55 (codified at 18 U.S.C. §§ 4203, 4205 and 4206, respectively). Even such a conspicuous change as the omission of the "reliable information" clause from former § 717 was later dismissed by at least one court as "probably a drafting oversight" given the lack of any "express reference of congressional intent that would indicate that the change

was intentional." *Hyser v. Reed*, 318 F.2d 225, 241 n.11 (D.C. Cir. 1963) (en banc).

Given this legislative consistency, courts applying the 1948 Act maintained the view that Congress did not intend parole violator warrants to be within the scope of the Fourth Amendment, even despite growing recognition that parolees had some procedural due process rights in revocation proceedings. For instance, in an apparent departure from the Supreme Court's "escaped convict" analogy in *Anderson*, the D.C. Circuit observed in *Hyser* that "in providing for a warrant type of procedure for retaking parolees thought to have violated parole conditions, Congress has recognized the need for some minimal procedural safeguards," and that "something more than casual processes or varying improvisations was intended." *Id.* at 242, 244. Yet the court still stopped short of requiring compliance with the Fourth Amendment. Characterizing a parole violator warrant as an "administrative arrest warrant," the court observed that "Congress evinced no intent to require precisely the same formalities and safeguards as to those contained in the Constitution for criminal arrests," and it reaffirmed the view that "Congress meant to provide . . . [that] the retaking [of a parole violator] is not 'an arrest within the meaning of the constitutional provisions.' " *Id.* at 241, 244 (quoting *Story*, 97 F.2d at 188). Accordingly, while the court proceeded to prescribe in detail various requirements for the issuance of a parole violator warrant, including "a written application . . . reciting the facts believed to constitute a violation" and that "the facts recited . . . , if true, amount to satisfactory evidence that parole conditions have been violated," neither probable cause nor oath or affirmation were ever mentioned. *Id.* at 245; *see also id.* at 241 & n.12 (discussing the meaning of "satisfactory evidence").

Even when Congress finally did respond to court decisions by codifying certain judicially-recognized due process rights of parolees, it again made no changes to bring parole violator warrants within the scope of the Fourth Amendment. The

Parole Commission and Reorganization Act, Pub. L. No. 94-233, 90 Stat. 219 (1976), was Congress' final recodification and comprehensive amendment to the parole statutes before the 1984 repeal, and it produced the provisions we construe today. It was intended in part to legislatively address the Supreme Court's then-recent decision in *Morrissey v. Brewer*, 408 U.S. 471 (1972), which declared that a parolee's interest in his conditional liberty is protected by the Fourteenth Amendment and prescribed certain minimum procedural safeguards for the revocation process. *Id.* at 482-83, 484-85; S. Rep. No. 94-369, at 15 (1975), *as reprinted in* 1976 U.S.C.C.A.N. 335, 337. The Court's prescriptions included, among other things, notice of the alleged parole violations and the parolee's rights; an opportunity for a prompt informal preliminary hearing near the place of arrest, at which an independent administrative officer must determine whether probable cause exists for the parolee's continued detention pending a final decision on revocation; and an opportunity for a final hearing — not rising to the level of a criminal trial — to determine whether revocation is warranted. *Morrissey*, 408 U.S. at 485-89. Congress accordingly codified these safeguards at 18 U.S.C. §§ 4213(c) (notice) and 4214 (preliminary and final hearings). Parole Commission & Reorganization Act § 2, 90 Stat. at 228-30.

Notably, however, neither the Supreme Court nor Congress suggested that stricter procedures were required for the issuance of a parole violator warrant for a parolee's initial arrest. In *Morrissey*, despite tempering *Anderson*'s strong-form version of the "custody" theory, the Court nonetheless reaffirmed that "parole is an established variation on imprisonment of convicted criminals" and continued to give due recognition of that special status as limiting the rights of parolees as compared to ordinary citizens. 408 U.S. at 477, 480, 483; *see also Samson v. California*, 126 S.Ct. 2193, 2198-99 & n.2 (2006). And nearly all of the new safeguards prescribed by the Court and codified by Congress regard only the process due a parolee in revocation proceedings *after* he is retaken. *See D'Amato*

*v. U.S. Parole Comm'n*, 837 F.2d 72, 75-76 (2d Cir. 1988); S. Rep. No. 94-369, at 18, 25-26, *as reprinted in* 1976 U.S.C.C.A.N. at 339, 347-48; H.R. Rep. No. 94-838, at 33-34 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 351, 365-66. Even the notice requirement, which does relate to the warrant procedures, merely relates to the content of the warrant rather than the justification for its issuance.

For our purposes, the 1976 Act is practically indistinguishable from the 1910 and 1948 Acts in authorizing the retaking of a parole violator on an administrative warrant outside the scope of the Fourth Amendment. Much like former 18 U.S.C. §§ 716 and 717 (1910-1948) and former 18 U.S.C. §§ 4203, 4205 and 4206 (1948-1976), the latest parole statutes continue to provide that "[a] parolee shall remain in the legal custody and under the control of the Attorney General," and that "[i]f any parolee is alleged to have violated his parole, the Commission may . . . issue a warrant and retake the parolee" "by taking such parolee and returning him to the custody of the regional commissioner, or to the custody of the Attorney General." 18 U.S.C.A. §§ 4210(a), 4213(a), (d) (West Supp. 2007); Parole Commission & Reorganization Act § 2, 90 Stat. at 226-28.

**[5]** Although the 1976 Act did incorporate for the first time an express "probable cause" requirement for revocation proceedings, it has no bearing on the issuance and execution of a parole violator warrant. The term appears not in § 4213 but in § 4214, which expressly applies only after a parolee has already been "summoned or retaken under section 4213." 18 U.S.C.A. § 4214(a)(1)(A) (West Supp. 2007); *see also* H.R. Rep. No. 94-838, at 34, *as reprinted in* 1976 U.S.C.C.A.N. at 366 ("following the issuance of a summons or warrant"). While § 4214 entitles a retaken parolee to "a preliminary hearing . . . to determine if there is probable cause to believe that he has violated a condition of his parole," that inquiry is intended not as a post-hoc examination of the warrant's validity but to determine whether the circumstances justify "incar-

ceration of the parolee pending further revocation proceedings," among other options. 18 U.S.C.A. § 4214(a)(1)(A) (West Supp. 2007); *see also* S. Rep. No. 94-369, at 18, *as reprinted in* 1976 U.S.C.C.A.N. at 339. Thus, the 1976 Act requires probable cause as a prerequisite only for continuing revocation proceedings beyond the preliminary hearing and extending a retaken parolee's detention, not to compel an alleged parole violator's appearance at such a hearing. *Cf. Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975) (holding with respect to an ordinary criminal defendant that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest"). Congress certainly could have included "probable cause" in both §§ 4213 and 4214, but it opted not to.

[6] Instead, for the first time Congress expressly referenced a mere allegation as the necessary predicate for issuing a parole violator warrant. *Compare* 18 U.S.C. § 4213(a) (West Supp. 2007) ("is alleged to have violated his parole") *with* 18 U.S.C. § 4205 (1970) ("has violated his parole") *and id.* § 717 (1946) ("reliable information that the prisoner has violated his parole"). The legislative history also repeatedly mentions an allegation as a sufficient predicate. *See* S. Rep. No. 94-369, at 18, *as reprinted in* 1976 U.S.C.C.A.N. at 339 ("In the case of allegations"); H.R. Rep. No. 94-838, at 33, *as reprinted in* 1976 U.S.C.C.A.N. at 365-66 (describing § 4213 as "giving the Commission discretion to use either a summons or warrant when a condition of parole has alleged to have been violated"). Given the lack of any explanation of congressional intent regarding the allegation clause specifically, Congress might not have intended any substantive change from the prior Acts. *See* H.R. Rep. No. 94-838, at 33, *as reprinted in* 1976 U.S.C.C.A.N. at 365-66; *Hyser*, 318 F.2d at 241 n.11; *see also* 28 C.F.R. § 2.44 (continuing to require "satisfactory evidence" of the alleged violation). But at the very least the allegation clause clarifies that, in marked contrast to the imposition of heightened safeguards for post-arrest revocation pro-

ceedings, Congress expressly kept to a minimum the requirements for issuing a summons or warrant to ensure a parolee's appearance and intended to codify only those rights prescribed by *Morrissey* and guaranteed under the Fourteenth Amendment, not the Fourth Amendment.

**4**

Finally, we are unpersuaded by Sherman's argument that we should construe § 4213 as incorporating the requirements of the Warrant Clause in order to avoid raising serious doubts as to its constitutionality. Although in *Vargas-Amaya* we so applied the constitutional-doubt canon of statutory construction as to § 3583(i), we did so only as an alternative rationale confirming our reading of the statute's plain language. Because our textual analysis mooted any potential constitutional problems, we assumed *arguendo* that § 3583(i) was fairly susceptible of two constructions and then employed the canon of constitutional doubt to doubly reject the Government's reading. 389 F.3d at 906. The situation here is much different, for our reading of § 4213's plain text actually raises constitutional issues. We therefore lack the luxury of engaging in a hypothetical exercise in alternative rationales and must determine whether the constitutional-doubt canon applies at all. We conclude it does not.

The canon of constitutional avoidance has no application when a statute's language is unambiguous and Congress' intent is clear. As our preceding textual analysis reveals, § 4213 is susceptible of only one construction, which we therefore must adopt despite its potential for raising a significant constitutional question regarding the statute's validity. *Almendarez-Torres v. United States*, 523 U.S. 224, 239 (1998). Although "one of the canon's chief justifications is that it allows the courts to *avoid* the decision of constitutional questions," avoidance cannot be an end in itself lest the canon become something it is not — a method of resolving constitutional questions by other means. *Clark v. Martinez*, 543 U.S.

371, 381 (2005). The canon is merely a tool of statutory interpretation, "not a license for the judiciary to rewrite language enacted by the legislature" for "we cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question." *Salinas v. United States*, 522 U.S. 52, 59-60 (1997) (internal quotation marks and citations omitted). "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as *a means of choosing between them*." *Clark*, 543 U.S. at 385. It "rest[s] on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts" and "is thus a means of giving effect to congressional intent, not of subverting it." *Id.* at 381-82.

[7] Moreover, our interpretation of § 4213 as excepting administrative parole violator warrants from the Warrant Clause of the Fourth Amendment is entirely consistent with the presumption that Congress legislates in the light of constitutional limitations. *See Harris v. United States*, 536 U.S. 545, 556 (2002). As already discussed, the 1976 Act was passed after the *Anderson* Court had analogized the rights of parole violators with those of escaped prisoners, the Fourth and D.C. Circuits had repeatedly rejected application of the Warrant Clause to parole violator warrants, and the *Morrissey* Court left such warrants alone in addressing the due process rights of parole violators. Thus, "Congress would have had no reason to believe that it was approaching the constitutional line by following that instruction" and continuing to authorize the issuance of parole violator warrants under substantially the same procedures as the 1910 Act had originally allowed. *Harris*, 536 U.S. at 556.

[8] For all of the above reasons, we hold as a statutory matter that an administrative warrant issued by the Parole Commission under 18 U.S.C. § 4213 for the retaking of an alleged parole violator need not be supported by oath or affirmation.

Thus, Sherman has failed to establish any deprivation of his statutory rights in support of his habeas petition.

**B**

We now turn to the constitutional question implicated by our statutory analysis. Pointing to the Fourth Amendment's prohibition that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," Sherman contends that sworn facts establishing probable cause are constitutionally required to support *all* warrants, even those issued by administrative agencies pursuant to statute. Consequently, he contends that his arrest and temporary detention on an unsworn parole violator warrant issued by the Parole Commission pursuant to 18 U.S.C. § 4213 is inconsistent with the Warrant Clause and therefore unconstitutional. *Cf. Payton v. New York*, 445 U.S. 573, 574-75 (1980) (holding that New York statutes authorizing warrantless entry into a private residence to make a routine felony arrest are inconsistent with the Fourth Amendment). We disagree.

No doubt, the once prevailing view that searches and seizures of parolees present no Fourth Amendment issues has been rejected in our modern jurisprudence. *Latta v. Fitzharris*, 521 F.2d 246, 248 (9th Cir. 1975) (en banc). But "[t]o hold that the Fourth Amendment is applicable . . . is only to begin the inquiry into the standards governing such intrusions." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618-19 (1989).

By now it is clear that parole searches and seizures must "pass muster under the Fourth Amendment test of reasonableness." *Latta*, 521 F.2d at 248-49. Under the general Fourth Amendment approach, we assess reasonableness by examining the totality of the circumstances and balancing the intrusion on the individual's privacy against the promotion of legitimate governmental interests. *Samson*, 126 S.Ct. at 2197. "In most *criminal* cases, we strike this balance in favor of the

procedures described by the Warrant Clause of the Fourth Amendment" and therefore ordinarily require a search or seizure to be "accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner*, 489 U.S. at 619 (emphasis added).

Parole is different, however. "[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey*, 408 U.S. at 480. "Quite to the contrary, the Court has recognized that those who have suffered a lawful conviction are properly subject to a broad range of restrictions that might infringe constitutional rights in free society . . . ." *United States v. Kincade*, 379 F.3d 813, 833 (9th Cir. 2004) (en banc) (internal quotation marks and brackets omitted).

Accordingly, in the parole context we have struck the proper balance between the individual and public interests by generally exempting parole searches and seizures from the requirements of the Warrant Clause. In *Latta* we held that the Fourth Amendment requires neither a warrant nor probable cause before a parole officer may search a California parolee. 521 F.2d at 250 (en banc plurality); *id.* at 253 (Wright, J., concurring); *id.* (Choy, J., concurring). Moreover, we thought it "indisputable, in view of the nature of parole and of the parole agent's responsibilities," that even if a warrant were constitutionally required "the showing necessary to obtain it would have to be substantially different from probable cause to avoid frustrating the purposes of parole." *Id.* at 251. And in *United States v. Rabb*, 752 F.2d 1320, 1324 (9th Cir. 1984), we extended *Latta* to parole arrests. "Under the *Latta* analysis, once a violation is established, the public interest in apprehending parole violators outweighs the parolee's privacy interest," such that "if a parole officer reasonably believes a parolee is in violation of his parole, the officer may arrest the parolee." *Id.* Thus, as we later summarized: "Under California and federal law, probable cause is not required to arrest a

parolee for a violation of parole. Warrantless arrests of parole violators are also valid." *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991).

These principles apply equally to federal parolees like Sherman. It is immaterial here that *Latta*, *Rabb* and *Butcher* all involved California state parolees or that California law may in some ways be stricter than federal law in terms of the conditions placed on parolees. *Compare* Cal. Penal Code Ann. § 3067(a) (West 2007) (requiring that state parolees agree in writing to be subject to search or seizure at any time "with or without a search warrant and with or without cause") *with* 28 C.F.R. § 2.44 (West 2007) (requiring "satisfactory evidence" of a parole violation for the issuance of an administrative parole violator warrant). In *Latta* we considered the Fourth Amendment rights of parolees without reference to such jurisdiction-specific provisions and instead relied on those characteristics of parole that are more universal — *e.g.*, the nature, goals and purposes of parole, parolees' unique legal status and diminished expectation of privacy, and the presence of long-standing statutory or judicial authority for warrantless searches and seizures of parolees. 521 F.2d at 249-51. And *Rabb*'s extension of *Latta* to parole arrests was based on the "same analytical framework" and an observation that echoes the congressional intent underlying 18 U.S.C. § 4213: Given that a parolee "remains under legal custody," "a parole arrest [is] more like a mere transfer of the subject from constructive custody into actual or physical custody, rather than like an arrest of a private individual who is the suspect of a crime." *Rabb*, 752 F.2d at 1324 (internal quotation marks omitted). Thus, while the jurisdiction-specific aspects of California law may be a material factor in some circumstances, *see, e.g.*, *United States v. Lopez*, 474 F.3d 1208, 1214 (9th Cir. 2007) (upholding a warrantless, suspicionless search of a California parolee's residence as reasonable in light of the California parole-search statute and the parolee's conditions of release), nothing in the reasoning of *Latta* and

its progeny would limit the precedential effect of those decisions in the context of federal parole.

[9] Because searches and seizures of parolees are generally not subject to the requirements of the Warrant Clause, we conclude that the Fourth Amendment does not require an administrative parole violator warrant to be supported by oath or affirmation. We therefore hold that petitioner's arrest on a unsworn parole violator warrant issued by the U.S. Parole Commission pursuant to 18 U.S.C. § 4213 was not unconstitutional under the Warrant Clause of the Fourth Amendment.

Lest there be any confusion, our holding today is in keeping with the fact that "[o]ur cases have not distinguished between parolees, probationers, and supervised releasees for Fourth Amendment purposes." *Kincade*, 379 F.3d at 817 n.2. The distinctions we have recognized between parole and supervised release warrants are fundamentally statutory, not constitutional. *Vargas-Amaya* stands for the relatively narrow proposition that an ordinary judicial warrant that is statutorily required for the arrest of a person on supervised release must comply with the Warrant Clause of the Fourth Amendment in order to extend the court's jurisdiction under § 3583(i). *See Vargas-Amaya*, 389 F.3d at 907 & n.5 (addressing "whether a warrant for violation of the terms of release must comply with the Warrant Clause," given the fact that "by statute, a [judicial] warrant was required to extend the court's jurisdiction"); *cf. United States v. Murguia-Oliveros*, 421 F.3d 951, 955 (9th Cir. 2005) (holding that the court had jurisdiction to revoke supervised release under § 3583(e)(3) despite the releasee's arrest on "an unsworn warrant"). We never considered the notion of an administrative warrant like that provided in § 4213. *See Vargas-Amaya*, 389 F.3d at 904; *see also id.* at 906 (discussing "*all* warrants" in terms of only "search" and "arrest" warrants). And we expressly avoided the question of whether a supervised releasee's arrest must comply with the Warrant Clause in the absence of a statute requiring a judicial warrant. *Id.* at 907 n.5 ("we do not address whether

Vargas' arrest was otherwise a valid warrantless arrest"); *cf. Latta*, 521 F.2d at 250-51. That is the question we answer today, albeit in the context of parole and given a statute that requires "an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment." *Abel*, 362 U.S. at 232.

## IV

**[10]** We hold that neither 18 U.S.C. § 4213 nor the Fourth Amendment require an oath or affirmation for the issuance of a valid administrative warrant for the retaking of an alleged parole violator. As petitioner alleges no other statutory or constitutional defect in the warrant on which he was retaken and held pending a preliminary hearing on revocation, we conclude his detention was not unlawful. The judgement of the district court denying Sherman's habeas petition challenging his detention on an unsworn parole violator warrant is

**AFFIRMED.**